## ANGEL *v.* BULLINGTON.

No. 31.   Argued March 5, 1946.   Reargued November 18, 19, 1946.—
Decided February 17, 1947.

*George Lyle Jones* argued the cause for petitioner. With him on the brief was *George H. Ward.*

*R. Roy Rush* argued the cause for respondent. With him on the brief was *John L. Walker.*

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

In 1940, Bullington, a citizen of Virginia, sold land in Virginia to Angel, a citizen of North Carolina. Only part of the purchase price was paid. For the balance, Angel executed a series of notes secured by a deed of trust on the land. Upon default on one of the notes, Bullington, acting upon an acceleration clause in the deed, caused all other notes to become due and called upon the trus-

tees to sell the land.   The sale was duly made in Virginia and the proceeds of the sale applied to the payment of the notes.   This controversy concerns attempts to collect the deficiency.

Bullington began suit for the deficiency in the Superior Court of Macon County, North Carolina.   Angel countered with a demurrer, the substance of which was that a statute of North Carolina (c. 36, Public Laws 1933, Michie's Code § 2593 (f)) precluded recovery of such a deficiency judgment.   This is the relevant portion of that enactment:

> "In all sales of real property by mortgagees and/or trustees under powers of sale contained in any mortgage or deed of trust hereafter executed, . . . the mortgagee or trustee or holder of the notes secured by such mortgage or deed of trust shall not be entitled to a deficiency judgment on account of such mortgage, deed of trust or obligation secured by the same: . . . ."

The Superior Court overruled the demurrer, and an appeal to the Supreme Court of North Carolina followed.   Bullington supported his Superior Court judgment on the ground that the United States Constitution precluded North Carolina from shutting the doors of its courts to him.   The North Carolina Supreme Court, holding that the North Carolina Act of 1933 barred Bullington's suit against Angel, reversed the Superior Court and dismissed the action.   220 N. C. 18, 16 S. E. 2d 411.   Bullington did not seek to review this judgment here.   Instead, he sued Angel for the deficiency in the United States District Court for the Western District of North Carolina. Angel pleaded in bar the judgment in the North Carolina action.   The District Court gave judgment for Bullington, 56 F. Supp. 372, and the Circuit Court of Appeals for the Fourth Circuit affirmed.   150 F. 2d 679.   We granted certiorari, 326 U. S. 713, because the failure

to dismiss this action, on the ground that the judgment in the North Carolina court precluded the right thereafter to recover on the same cause of action in the federal court, presented an important question in the administration of justice.

1. We start with the fact that the prevailing rule as to *res judicata* is settled law in North Carolina. An adjudication bars future litigation between the same parties not only as to all issues actually raised and decided but also as to those which could have been raised. *Southern Distributing Co.* v. *Carraway,* 196 N. C. 58, 60–61, 144 S. E. 535, 537; *Moore* v. *Harkins,* 179 N. C. 167, 101 S. E. 564. When the disposition of a prior litigation is invoked as a bar to an action, the identity of the causes of action in the two suits is usually the bone of contention. On this score there can here be no controversy. It is indisputable that the parties, the nature of the claim and the desired relief were precisely the same in the two actions successively brought by Bullington against Angel, first in the Superior Court of Macon County and then in the federal district court. For all practical purposes, the complaint in the present action was a carbon copy of the complaint in the State court action. If the North Carolina action had been dismissed because it was brought in one North Carolina court rather than in another, of course no federal issue would have been involved. See, *e. g., Woods* v. *Nierstheimer,* 328 U. S. 211. Had that been the case, a suit for the same cause of action could have been initiated in a North Carolina federal district court, just as another suit could have been brought in the proper North Carolina State court. But that is not the present situation. A quite different situation is before us. Being somewhat unusual, it calls for a critical consideration of the scope and purpose of the doctrine of *res judicata.*

2. The judgment of the Supreme Court of North Carolina would clearly bar this suit had it been brought anew

in a state court. For purposes of diversity jurisdiction a federal court is, "in effect, only another court of the State." *Guaranty Trust Co.* v. *York,* 326 U. S. 99, 108; see *Traction Company* v. *Mining Company,* 196 U. S. 239, 253; *Ex parte Schollenberger,* 96 U. S. 369, 377. Of course, Bullington could not have succeeded in the District Court for the Western District of North Carolina after an adverse judgment in the State courts, had the decision in this case involved no federal ground. That is equally true where a federal question was decided in the State courts. That the adjudication of federal questions by the North Carolina Supreme Court may have been erroneous is immaterial for purposes of *res judicata.* *Baltimore S. S. Co.* v. *Phillips,* 274 U. S. 316, 325. A higher court was available for an authoritative adjudication of the federal questions involved. And so the question is whether federal rights were necessarily involved and adjudicated in the litigation in the State courts.

3. For purposes of *res judicata,* the significance of what a court says it decides is controlled by the issues that were open for decision. What were the issues in the North Carolina litigation? Bullington sought a deficiency judgment. Angel, by demurrer, resisted on the ground that a North Carolina statute precluded a deficiency judgment. The North Carolina Supreme Court, reversing the trial court, found the North Carolina statute a bar to such a suit. It said that

> "the limitation created by the statute is upon the jurisdiction of the court in that it is declared that the holder of notes given to secure the purchase price of real property 'shall not be entitled to a deficiency judgment on account' thereof. This closes the courts of this State to one who seeks a deficiency judgment on a note given for the purchase price of real property. The statute operates upon the adjective law of the State, which pertains to the practice and procedure,

or legal machinery by which the substantive law is made effective, and not upon the substantive law itself. It is a limitation of the jurisdiction of the courts of this State." 220 N. C. 18, 20, 16 S. E. 2d 411, 412.

But the allowable "limitation of the jurisdiction of the courts" of North Carolina presents more than a question of local law for determination by the North Carolina Supreme Court. Speaking for a unanimous Court, Mr. Justice Brandeis thus expressed the subordination to the requirements of the Constitution of the power of a State to withdraw jurisdiction from its courts: "The power of a State to determine the limits of the jurisdiction of its courts and the character of the controversies which shall be heard in them is, of course, subject to the restrictions imposed by the Federal Constitution." *McKnett* v. *St. Louis & S. F. Ry. Co.,* 292 U. S. 230, 233. The Contract Clause, the Full Faith and Credit Clause, the Privileges or Immunities Clause, all fetter the freedom of a State to deny access to its courts howsoever much it may regard such withdrawal of jurisdiction "the adjective law of the State," or the exercise of its right to regulate "the practice and procedure" of its courts. *Broderick* v. *Rosner,* 294 U. S. 629, 642. A State "cannot escape its constitutional obligations by the simple device of denying jurisdiction in such cases to courts otherwise competent." *Kenney* v. *Supreme Lodge,* 252 U. S. 411, 415; and see *White* v. *Hart,* 13 Wall. 646. This pervasive principle of our federal law, constitutional and statutory, was thus put by Mr. Justice Holmes: " Whatever springes the State may set for those who are endeavoring to assert rights that the State confers, the assertion of federal rights, when plainly and reasonably made, is not to be defeated under the name of local practice." *Davis* v. *Wechsler,* 263 U. S. 22, 24.

4. Here, claims based on the United States Constitution were plainly and reasonably made in the North Caro-

lina suit. The North Carolina Supreme Court met these claims. It met them by saying that the North Carolina statute did not deal with substantive matters but merely with matters regulating local procedure. But whether the claims are based on a federal right or are merely of local concern is itself a federal question on which this Court, and not the Supreme Court of North Carolina, has the last say. That Court could not put a federal claim aside, as though it were not in litigation, by the talismanic word "jurisdiction." When an asserted federal right is denied, the sufficiency of the grounds of denial is for this Court to decide. *Titus* v. *Wallick,* 306 U. S. 282, 291. Bullington could have come here, not merely by the grace of this Court on certiorari, but on appeal, as did White in *White* v. *Hart, supra,* to challenge, successfully, the right of Georgia to limit the jurisdiction of the Georgia courts; as did the East New York Savings Bank in the recent case of *East New York Bank* v. *Hahn,* 326 U. S. 230, to challenge, though unsuccessfully, the limitation which New York placed upon the jurisdiction of its courts. Cf. *Kenney* v. *Supreme Lodge,* 252 U. S. 411, 416. Since it was open for Bullington to come here to seek reversal of the decision of the North Carolina Supreme Court shutting him out of the North Carolina courts and he chose not to do so, the decision of the North Carolina Supreme Court concluded an adjudication of a federal question even though it was not couched in those terms. For purposes of litigating the issues in controversy in the North Carolina action, the North Carolina Supreme Court was an intermediate tribunal. If a litigant chooses not to continue to assert his rights after an intermediate tribunal has decided against him, he has concluded his litigation as effectively as though he had proceeded through the highest tribunal available to him. An adjudication of an issue implies that a man had a chance to win his case. The chance was necessarily afforded by the North Carolina litigation.

It was in process of determination when the Supreme Court of North Carolina decided it against him. He forewent his right to have a higher court, this Court, enable him to win his chance by holding that he was right and that the North Carolina Supreme Court was wrong. He cannot begin all over again in an action involving the same issues before another forum in the same State.

5. It is suggested that the North Carolina Supreme Court did not adjudicate the "merits" of the controversy. It is a misconception of *res judicata* to assume that the doctrine does not come into operation if a court has not passed on the "merits" in the sense of the ultimate substantive issues of a litigation. An adjudication declining to reach such ultimate substantive issues may bar a second attempt to reach them in another court of the State. Such a situation is presented when the first decision is based not on the ground that the distribution of judicial power among the various courts of the State requires the suit to be brought in another court in the State, but on the inaccessibility of all the courts of the State to such litigation. And that is the essence of the present case. The only issue in controversy in the first North Carolina litigation was whether or not all the courts of North Carolina were closed to that litigation. The merits of that issue were adjudicated. And that was the issue raised in the second litigation in North Carolina—that in the federal district court. The merits of this issue having been adjudicated, they cannot be relitigated.

The "merits" of a claim are disposed of when it is refused enforcement. If an asserted federal claim is denied enforcement on a professed local ground, but a so-called local ground which is subject to review here because it is in fact the adjudication of a federal question, then the "merits" of that claim were adjudicated in the only sense that adjudication of the "merits" is relevant to the principles of *res judicata*. A State court can-

not sterilize federal claims by putting on the adjudication
a local label.

6. The merits of this controversy were adjudicated by
the North Carolina Supreme Court since that court, or
this Court on appeal, might have decided that the North
Carolina statute did not bar Bullington's first action. The
North Carolina statute might have been found uncon-
stitutional. Federal issues were thus involved in the
adjudication by the North Carolina Supreme Court.
Bullington knew that there were federal issues in the State
suit because he raised them. He was then content to
drop them and let the intermediate adjudication stand.
Now he wants an encore.

7. It is suggested that the North Carolina Supreme
Court construed the North Carolina statute to close only
the North Carolina State courts but not the federal court
sitting in North Carolina. In the first place, the North
Carolina Supreme Court said no such thing. It construed
the statute expressive of State policy and spoke only of
the jurisdiction of the State courts because it was con-
cerned only with the State courts. Secondly, it is most
incongruous to attribute to the legislature and judiciary
of North Carolina the imposition of a restriction against
all its citizens from suing for a deficiency judgment, while
impliedly authorizing citizens of other States to secure
such deficiency judgments against North Carolinians.
Thirdly, a North Carolina statute, upheld by the highest
court of North Carolina, is of course expressive of North
Carolina policy. The essence of diversity jurisdiction is
that a federal court enforces State law and State policy.
If North Carolina has authoritatively announced that de-
ficiency judgments cannot be secured within its borders,
it contradicts the presuppositions of diversity jurisdiction
for a federal court in that State to give such a deficiency
judgment. North Carolina would hardly allow defeat of
a State-wide policy through occasional suits in a federal

court. What is more important, diversity jurisdiction must follow State law and policy. A federal court in North Carolina, when invoked on grounds of diversity of citizenship, cannot give that which North Carolina has withheld. Availability of diversity jurisdiction which was put into the Constitution so as to prevent discrimination against outsiders is not to effect discrimination against the great body of local citizens.

Cases like *Lupton's Sons Co.* v. *Automobile Club,* 225 U. S. 489, are obsolete insofar as they are based on a view of diversity jurisdiction which came to an end with *Erie Railroad* v. *Tompkins,* 304 U. S. 64. That decision drastically limited the power of federal district courts to entertain suits in diversity cases that could not be brought in the respective State courts or were barred by defenses controlling in the State courts. Compare *Suydam* v. *Broadnax,* 14 Pet. 67, 75. Of course, where resort is had to a federal court not on grounds of diversity of citizenship but because a federal right is claimed, the limitations upon the courts of a State do not control a federal court sitting in the State. *Holmberg* v. *Armbrecht,* 327 U. S. 392.

8. After an adverse decision against Bullington on a cause of action created by State law, Bullington wants to start all over again in another North Carolina court, albeit a federal court. The first litigation raised and adjudicated federal issues every one of which is again involved in the second suit. To allow such a second suit is to say that a federal right in issue in a State court evaporates because the State court calls it a State right and the litigant accepts the decision. If tolerated, our federal system would afford fine opportunities for needlessly multiplying litigation in this way. The doctrine of *res judicata* is a barrier against it. Litigation is the means for vindicating rights, but it may also involve unwarranted friction and waste. The doctrine of *res judicata* reflects the refusal of law to toler-

ate needless litigation. Litigation is needless if, by fair process, a controversy has once gone through the courts to conclusion. Compare, *e. g., Hazel-Atlas Co.* v. *Hartford Co.*, 322 U. S. 238, 244. And it has gone through, if issues that were or could have been dealt with in an earlier litigation are raised anew between the same parties. *Chicot County Dist.* v. *Bank,* 308 U. S. 371.

*Judgment reversed.*

MR. JUSTICE REED, dissenting.

My understanding of the Court's decision is that the doctrine of *res judicata,* that is a former adjudication, defeats Bullington's claim against Angel. The opinion is limited to that point. In my view the conclusion reached by the Court is erroneous. To narrow the line of my disagreement, I shall state the issues treated in the opinion with which I agree. The causes of action and the parties in the two suits are identical. Federal questions were raised by Bullington's contention that the North Carolina statute, sufficiently quoted at the beginning of the Court's opinion, Michie's Code, 2593 (f), was unconstitutional by federal tests because it barred the North Carolina courts to Bullington's suit on his notes. It is immaterial, for the purposes of determining the availability of a plea of *res judicata,* whether the North Carolina judgment was erroneous or not. I agree, further, that, on the ground that a state cannot bar this cause of action from its courts, Bullington could have had review in this Court of the North Carolina judgment and that this Court, if it did not conclude that the North Carolina judgment rested on an adequate state ground, could have finally settled that federal constitutional issue.

The reasoning of the Court leads to the announced result because of these presuppositions with which I differ: (I) "For purposes of *res judicata,* the significance of what a court says it decides is controlled by the issues that

were open for decision." (II) "The 'merits' of a claim are disposed of when it is refused enforcement." (III) "Since it was open for Bullington to come here to seek reversal of the decision of the North Carolina Supreme Court shutting him out of the North Carolina courts and he chose not to do so, the decision of the North Carolina Supreme Court concluded an adjudication of a federal question even though it was not couched in those terms." (IV) "For purposes of diversity jurisdiction a federal court is, 'in effect, only another court of the State.'" "He cannot begin all over again in an action involving the same issues before another forum in the same State."

I. To say that for purposes of *res judicata* the significance of what a court says it decides is controlled by the issues, announces a rule which, so far as I know, has no prior authority. To adopt such a rule is to declare that a decision in a cause of action is final between the same parties although the court specifically reserves certain questions not necessary for its decision. *Res judicata* settles all questions which were raised or those that might have been raised but it settles them in accordance with the decision that is made. Of course, when a decision is upon the merits, a matter discussed later, the entire cause of action is adjudicated finally. But this North Carolina adjudication was not upon the merits. It was upon a question of judicial power. The pertinent excerpts from the opinion appear below.[1] The fact that other

---

[1] 220 N. C. at 20–21, 16 S. E. 2d at 412: "The statute operates upon the adjective law of the State, which pertains to the practice and procedure, or legal machinery by which the substantive law is made effective, and not upon the substantive law itself. It is a limitation of the jurisdiction of the courts of this State.

"The Legislature, within constitutional limitations, can fix and circumscribe the jurisdiction of the courts of this State. The Legislature has exercised its prerogative to so limit the jurisdiction of the

issues, going to the merits of the cause of action, might have been decided seems immaterial.

The rule which I consider sound appears in the Restatement of the Law, Judgments § 49, as follows:

> "Where a valid and final personal judgment not on the merits is rendered in favor of the defendant, the plaintiff is not thereby precluded from thereafter maintaining an action on the original cause of action and the judgment is conclusive only as to what is actually decided."

The way to know what was actually decided in this case is to read the applicable portion of the opinion printed in the preceding note. The result of the decision was to leave the cause of action unaffected because when a state denies a remedy, it leaves "unimpaired the plaintiff's substantive right, so that he is free to enforce it elsewhere." *Bradford Electric Co.* v. *Clapper,* 286 U. S. 145, 160; *Dalton* v. *Webster,* 82 N. C. 279.

---

courts of this State that holders of notes given for purchase price of real estate are not entitled to a deficiency judgment thereon in such courts. We cannot hold that this action upon part of the legislative branch of our government impinged the full faith and credit clause of the Constitution of the United States or the general doctrine that the validity of a contract is determined by the law of the place where made, the *lex loci contractus* as distinguished from the *lex fori.* Both the constitutional provision urged and the general doctrine invoked by the appellee are substantive law and the statute involved, as aforesaid, relates solely to the adjective law. No denial of the full force and credit of the Virginia contract is made, and no interpretation or construction of the contract involved is attempted. The court, being deprived of its jurisdiction, has no power to render a judgment for the plaintiff in the cause of action alleged. 'Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause. And this is not less clear upon authority than upon principle.' "

II. It is now to be considered whether or not this judgment of the state court was on the merits. That court said it had no "power to render a judgment for the plaintiff in the cause of action alleged." This Court now says that such a decision is a disposition on the merits. Evidently what is meant is that when a litigant, who has raised a federal constitutional question, has his case dismissed on the ground that the court "has no power to render a judgment for the plaintiff in the cause of action alleged," there is a judgment on the merits on the constitutional question as well as upon the right to recover in North Carolina on any other ground. If we have power to declare that it "concluded an adjudication of a federal question even though it was not couched in those terms," I would reach the opposite conclusion based upon what the North Carolina court did. In my view, the North Carolina court merely decided that it had no power to adjudicate the cause of action. Certainly the state court had the power to interpret its own statute. *Knights of Pythias* v. *Meyer,* 265 U. S. 30, 32; *Chaplinsky* v. *New Hampshire,* 315 U. S. 568. The withdrawal of jurisdiction surely does not make a judgment one upon the merits. The state court cited *Ex parte McCardle,* 7 Wall. 506, to emphasize what it meant. If there was a suit on this note in a federal court on an allegation of diversity of citizenship and the federal court dismissed the suit with an opinion saying that the case was dismissed because of lack of jurisdiction, *e. g.* proof of non-diversity of citizenship, no state court would hold that there had been a decision upon the merits. Where there is no jurisdiction of the subject of the action the judgment is not upon the merits. *Stoll* v. *Gottlieb,* 305 U. S. 165, 171–172. Of course, if there is a judgment upon the merits, that judgment would be binding on both federal and state courts. Even if the North Carolina decision is not upon the merits, it is conclusive on North Carolina courts and upon federal courts in North Carolina,

if those federal courts are courts of the State of North Carolina in the sense that they must follow state decisions upon the power of state courts, under the rule of *Guaranty Trust Co.* v. *York,* 326 U. S. 99. I do not think that the *Guaranty* rule applies. See subdivision IV.

III. If the two preceding numbered divisions of this opinion are sound, there was no occasion for Bullington to seek a review of the first judgment in this Court. He was in the position of the owner of a cause of action, dismissed because prematurely brought or brought in the wrong county. The judgment that the Supreme Court of North Carolina ordered was "dismissed," not on the merits, not with prejudice, and not judgment for the defendant, but a simple dismissal. North Carolina might have declared, by statute, that no cause of action would be recognized in North Carolina for the recovery of a deficiency on a mortgage indebtedness. Instead of this, we are told, authoritatively, by the Supreme Court of North Carolina that North Carolina has withdrawn the jurisdiction of its courts from such a cause of action. This produces quite a different situation.

IV. The pith of the problem, as I see it, is laid bare by the foregoing differentiations. It consists of the question whether the North Carolina decision establishes a controlling rule of law upon the constitutionality of the state statute as tested by the federal Constitution or adjudicates that the statute merely withdraws jurisdiction from state courts over a type of action. This Court concludes that the state decision determined the constitutionality of the statute and that its holding was binding on all federal courts in North Carolina, as well as state courts. This idea is comprehended in the Court's opinion by the statements that the federal courts are courts of the state in diversity cases and that a litigant cannot stop with an intermediate court decision against him and begin a new litigation on the same cause of action.

198

The Court reaches the conclusion that *res judicata* should apply by an application of *Erie Railroad* v. *Tompkins,* 304 U. S. 64, and *Guaranty Trust Co.* v. *York,* 326 U. S. 99. The teaching of those cases is accepted by me. They lead to the conclusion that in diversity cases, legal or equitable, and this proceeding is a diversity case, the federal courts in a state apply the law of that state in matters of substantive law. In matters of procedure and jurisdiction, I take it, no one would contend that the doctrine of *Erie Railroad* is applicable. One may regret that the line of the Great Divide between substance and procedure cannot be clearly marked so that all may agree as to its location in any one case. But that line exists. We have said that federal courts must follow the law of the state as to burden of proof. *Cities Service Co.* v. *Dunlap,* 308 U. S. 208; *Palmer* v. *Hoffman,* 318 U. S. 109, 117; as to conflict of laws, *Griffin* v. *McCoach,* 313 U. S. 498; *Klaxon Co.* v. *Stentor Co.,* 313 U. S. 487, and as to state statutes of limitation in equity cases, *Guaranty Trust Co.* v. *York, supra.* The reason for these conclusions is to gain the desirable end of a symmetry of law within each state. The momentum of the opinions, just cited, and of the desire for uniformity should not cause us to disregard the rule that state law, statutory or judicial, directed at remedies or powers of courts, cannot affect the federal system. Each of the cases just cited follows the declarations of state law by state courts. In this case, this Court departs from the state court's interpretation of the meaning of a state statute in order to bring about the federal policy of uniformity. By this, the Court departs from the sound rule that a state court's interpretation of state statutes is binding on federal courts. In reaching the conclusion which it does, this Court decides that if a state court does not have power to adjudicate a cause, neither does a federal court in that state. It also departs from controlling precedents that state enactments on jurisdic-

tion, remedies and procedures do not affect the jurisdiction, remedies or procedures of federal courts. It is true that these antedate the *Erie* case but that case did not change the state and federal jurisdiction.

In *Pusey & Jones Co.* v. *Hanssen,* 261 U. S. 491, this Court held that an authority given by Delaware to its Chancellor to appoint a receiver for an insolvent corporation on the application of any creditor did not give additional power to the federal court to appoint a receiver in a diversity case on the application of a simple creditor although the federal courts had long exercised the right to appoint receivers on the application of a secured creditor. This Court said:

> "That a remedial right to proceed in a federal court sitting in equity cannot be enlarged by a state statute is likewise clear, *Scott* v. *Neely,* 140 U. S. 106; *Cates* v. *Allen,* 149 U. S. 451. Nor can it be so narrowed, *Mississippi Mills* v. *Cohn,* 150 U. S. 202; *Guffey* v. *Smith,* 237 U. S. 101, 114. The federal court may therefore be obliged to deny an equitable remedy which the plaintiff might have secured in a state court. Hanssen's contention is that the statute does not enlarge the equitable jurisdiction or remedies; and that it confers upon creditors of a Delaware corporation, if the company is insolvent, a substantive equitable right to have a receiver appointed. If this were true, the right conferred could be enforced in the federal courts, *Scott* v. *Neely,* 140 U. S. 106, 109; since the proceeding is in pleading and practice conformable to those commonly entertained by a court of equity. But it is not true that this statute confers upon the creditor a substantive right."

See *Henrietta Mills* v. *Rutherford County,* 281 U. S. 121, 127–128; *Kelleam* v. *Maryland Casualty Co.,* 312 U. S. 377, 382.

In *Lupton's Sons Co.* v. *Automobile Club,* 225 U. S. 489, this Court held that a contract which could not be sued upon in the courts of New York because a New York statute provided that no foreign corporation could "maintain any action in this state" without a certificate that it had complied with certain state requirements to do business in the state, could nevertheless be sued upon in the federal court. It was said, p. 500:

> "The State could not prescribe the qualifications of suitors in the courts of the United States, and could not deprive of their privileges those who were entitled under the Constitution and laws of the United States to resort to the Federal courts for the enforcement of a valid contract. . . . The State in the statute before us made no such attempt. The only penalty it imposed, to quote again from the *Mahar Case,* was a disability to sue 'in the courts of New York.' "

These cases make clear that in diversity litigation the federal courts are not simply courts of the state. They are so far as the enforcement of the substantive laws of the state are concerned, but not when procedure or power to act is involved. The *Lupton* case shows too, that, when a state denies power to its courts to adjudicate a cause, that denial does not affect the power of the federal courts to decide the case. As I am of the opinion that the state court merely denied its power to adjudge between these parties and did not decide the merits of Bullington's cause of action, the state court judgment cannot be *res judicata* in the federal court.

If it is true that in passing upon the meaning of a state statute, a federal court is not required to follow the state court's characterization of its statute, as remedial or substantive, this Court's present determination that the statute is substantive for our purposes cannot change the effect in this litigation of the state's decision to the contrary.

When the state court held that for its purposes the statute was remedial, it was remedial in that court. If remedial, the state judgment was not upon the merits and could not be *res judicata* in any court as to the right to recover on the cause of action.

If the plea of *res judicata* is not good and this Court should decide that the state statute is substantive law, *i. e.*, a declaration of the policy of North Carolina against claims on deficiencies after sales of incumbered property, it would be necessary to determine the constitutionality of the North Carolina statute that declares uncollectible in North Carolina a claim on a contract that was good in Virginia. In view of this Court's present decision, I express no opinion upon this issue.

MR. JUSTICE JACKSON and MR. JUSTICE RUTLEDGE join in this opinion.

MR. JUSTICE RUTLEDGE, dissenting.

This is a hard case making, I think, proverbially bad law. On the surface what seems to be decided is simply a question of *res judicata*. Actually the decision rests on an "and/or" hodgepodge of *res judicata* and *Erie* doctrines.[1] In my judgment the admixture not only is unnecessary but distorts and misapplies both doctrines. If *res judicata* properly applies and is adequate to dispose of the cause, there is no occasion for the sidewise introduction of *Erie* ideas. Likewise, if *Erie* appropriately governs the case, the Court's elaborate and altogether novel discussion of *res judicata* is superfluous.

The Court has not decided this case on any basis of full faith and credit.[2] Accordingly *res judicata* as it is applied

---

[1] *Erie R. R. Co.* v. *Tompkins,* 304 U. S. 64.

[2] The Court does not hold that the full faith and credit clause, Const., Art. IV, § 1, binds the federal courts to give the North Carolina judgment the effect of precluding a further suit in the federal

has neither constitutional nor statutory status. For present purposes it is therefore purely a rule of judicial administration to be applied, like all such rules, as considerations of justice and right application of the policy require, not omitting due regard for its appropriate limits.

*Res judicata* is a generally sound but by no means unlimited policy of judicial action. The doctrine is grounded in the need for putting an end to litigation.[3] It does this by precluding the parties from showing what is or may be the truth.[4] The sound core of the policy is that ordinarily one suit which determines or gives a full and fair chance

---

courts on the substantive cause of action. Two difficulties would arise. (1) If, as the Court asserts, the federal court in diversity cases were only "another North Carolina court," the full faith and credit clause would have no application; but, that it may, see *Cooper* v. *Newell*, 173 U. S. 555, 567: ". . . the courts of the United States are tribunals of a different sovereignty, and exercise a distinct and independent jurisdiction from that exercised by the state courts, and this is true in respect of the courts of the several States as between each other. And the courts of the United States are bound to give to the judgments of the state courts the same faith and credit that the courts of one State are bound to give to the judgments of the courts of her sister States." See also *American Surety Co.* v. *Baldwin*, 287 U. S. 156, where Mr. Justice Brandeis spoke of the full faith and credit clause in connection with the obligation of a federal court sitting in Idaho to follow, as *res judicata*, a previous Idaho decision. (2) The decision would contradict, not confirm, as full faith and credit require, the basis for the North Carolina court's judgment, namely, that the statute does not outlaw substantive claims but only deprives the state courts of power to entertain them.

[3] See Moschzisker, Res Judicata (1929) 38 Yale L. J. 299, 300. In this respect, of course, *res judicata* resembles both statutes of limitations and the doctrine of laches in equity, as well as full faith and credit when applicable to judgments.

[4] Scott, Collateral Estoppel by Judgment (1942) 56 Harv. L. Rev. 1. So do statutes of limitations, laches and full faith and credit *re* judgments, when applicable.

for determining causes of action and issues [5] between litigants should be enough and when this much has been given further opportunity should be denied.

Stated so simply, however, the doctrine would be as much trap for the unwary as boon for the wise or lucky litigant. Exceptions and qualifications are so numerous as to make the field not only technical but treacherous, this case being a nice illustration. Qualification may itself lose sight of basic policy and become sheer technicality.[6] But general rules are not qualified so extensively as this one has been without reason. There is good reason for much of what has been done in this respect with res judicata.

The effect of the rule qualifies its scope. It is not every case in which a litigant has had "one bite at the cherry" that the law forbids another. In other words, it is not every such case in which the policy of stopping litigation outweighs that of showing the truth. This is so not only where the first suit actually gives no real chance to secure a substantial determination,[7] but also though less generally of others in which the litigant has such a chance and foregoes or misses it.[8] It is so too whether the claimed

---

[5] Cf. note 9 *infra* and text.

[6] A sign generally that something is radically wrong with the rule or with it and the exceptions together. Cf. *Georgetown College* v. *Hughes,* 76 U. S. App. D. C. 123, 130 F. 2d 810.

[7] See *Walden* v. *Bodley,* 14 Pet. 156, 161; *Hughes* v. *United States,* 4 Wall. 232, 237; Restatement, Judgments (1942) § 49.

[8] "Judgments of nonsuit, of non prosequitur, of nolle prosequi, of discontinuance and of dismissal generally, are exceptions to the general rule that when the pleadings, the court, and the parties are such as to permit of a trial on the merits, the judgment will be considered as final and conclusive of all matters which could have been so tried." 2 Freeman, Judgments (5th ed.) 1579–1580. And "generally speaking, judgments merely of dismissal, whether voluntary or involuntary, in actions at law are not on the merits and do not operate

estoppel by prior suit is "direct" or "indirect," that is, on the same or a different cause of action.[9]

Upon the law as well as the policy, the question has been one of balancing considerations of justice and convenience between stopping litigation and stopping the showing of the truth.[10] That balance has never been so one-sided in favor of the former that the matter is ended simply by showing that a party has had some chance, however slight, in a previous litigation to secure a favorable decision.

If this were the law every case where a party takes a nonsuit or a dismissal expressly for the purpose of starting over again would be a final and conclusive determination against him. I know of no jurisdiction where the law has been so harsh. Nor do I think it should be in this one.

There are too many good reasons why persons starting out in litigation should not be barred of their rights by the fact alone that they withdraw in order to start again, even though by going on to the end they might pull through successfully against great odds. Crucial witnesses may disappear or die and time be required for finding them or others. Surprise in the course of trial may occur justifying withdrawal without fatal loss of rights. Even as in

as a bar or estoppel in subsequent proceedings involving the same matters." *Id.* at 1582. See *Haldeman* v. *United States,* 91 U. S. 584; *Jacobs* v. *Marks,* 182 U. S. 583; *Manhattan Life Ins. Co.* v. *Broughton,* 109 U. S. 121; Restatement, Judgments (1942) §§ 53, 54.

[9] Scott, *op. cit. supra* note 4, p. 2; Restatement, Judgments (1942) 175–176. Usually "direct" estoppel is said to preclude redetermination of issues actually determined or which might have been determined "on the merits." *Ibid.* But "indirect" estoppel precludes relitigating only issues actually decided. *Cromwell* v. *County of Sac,* 94 U. S. 351, 352–353.

[10] The process of course crystallizes in definite rules for types of cases, but the important fact is that these rules do not all come out the same way for application of the rule of preclusion and that in the process of crystallization the weighing of the opposing considerations forms the rule for or against that policy.

this case, jurisdictional and other uncertainties may arise putting in jeopardy or making comparatively or completely futile further pursuit of the pending litigation when another suit in the same or a different court might provide a more certain and less expensive mode of disposing of the controversy for all the parties.

These and other reasons have qualified flat application of *res judicata* too long and too universally for their qualifying effects to be thrown overboard now simply because a withdrawing litigant might conceivably have come out victorious had he gone on to the very farthest end.[11]   Such a criterion would turn *res judicata* into a rigid rule requiring exhaustion of judicial remedies, a notion heretofore wholly alien to the doctrine.[12]

This course, moreover, seems to be justified on the basis that the grounds of an adjudication have nothing to do with the adjudication or its effects, for purposes of applying *res judicata*.   That is true, apparently, for applying *res judicata* to Bullington's failure to take his appeal here in the North Carolina state court suit, so as to cut off his right ever to secure a decision on the " 'merits' in the sense of the ultimate substantive issues of a litigation."   But it is not true, apparently, for application of the doctrine to different jurisdictional rulings.   For "an adjudication declining to reach such ultimate substantive issues may bar a second attempt to reach them in another court of the

---

[11] The Court clearly implies that Bullington would not be foreclosed on *res judicata* by the North Carolina decision if his route to this Court for review had been by certiorari rather than by appeal.   But the ruling as made, in so far as it rests on the failure to appeal, ignores the settled law that for purposes of applying *res judicata* failure to take appeal has no bearing once the judgment becomes final.   See note 19.   It also defeats the policy of *res judicata;* for a party, instead of being allowed to accept the jurisdictional ruling, is forced to appeal to the highest court in order to save his rights no matter how meritless the appeal, thus prolonging rather than shortening litigation.

[12] See note 19.

State.   Such a situation is presented when the first decision is based *not on the ground* that the distribution of judicial power among the various courts of the State requires the suit to be brought in another court in the State, *but on* the inaccessibility of all the courts of the State to such litigation.   And that is the essence of the present case."   (Emphasis added.)

I can understand the distinction drawn.   But I find difficulty in understanding why *res judicata* turns for application in this case to cut off determination of substantive issues not at all upon the grounds of decision but only on the fact of adverse decision; but, for application to such issues when a jurisdictional question is also involved, it turns not simply upon the adjudication, but upon the grounds for the jurisdictional determination.   If *res judicata* is governed solely by the adjudication without reference to what is adjudicated, that is, merely by the fact of adverse decision, I should think that rule would apply in all cases.   If, on the contrary, the grounds of adjudication are relevant and controlling for the one class of questions, I should think they would be for the other.

The fallacy lies in the novel and unprecedented idea that the groundings of a court's decision have nothing to do with whether *res judicata* applies, except when they relate to one kind of jurisdictional determination rather than another.   Apart from the exception, the idea ignores the vast body of law which has grown up on the basis that the grounding of the decision is the criterion for applying the doctrine.[13]   And much of that case law has been that if the " 'merits' in the sense of the ultimate substantive issues of a litigation" are not reached, their later determination is not foreclosed.[14]   This is true whether or not the jurisdic-

---

[13] See Scott, *op. cit., supra* note 4; Restatement, Judgments (1942) §§ 49, 50, 53, 54.

[14] See authorities cited in note 7 *supra*.

tional ruling is erroneous or valid and whether or not if erroneous it might have been corrected on appeal.

That law I think is sound, and I think it is just as sound when the jurisdictional decision goes off erroneously on a federal ground or erroneously ignoring one as when it rests on a valid basis. It is grounded in the policy that unless a litigant gets a real bite at the apple of discord he should not be foreclosed from another attempt. Its basis is that in such a case it is better and more just not to stop litigation than it is to stop the showing of the truth and thereby bring about a forfeiture of valuable substantive rights without giving at least one full and fair, which means fairly certain, opportunity for securing decision upon them.

Bullington has not had such an opportunity. He has never received, and now never can receive a decision on the substantive merits of his claim, unless possibly he can catch and serve Angel in another state and after prolonged further litigation succeed in inducing this Court to hold the North Carolina bar and *res judicata* not operative there. See *Riley* v. *New York Trust Co.*, 315 U. S. 343, 349: "By the Constitutional provision for full faith and credit, the local doctrines of *res judicata,* speaking generally, become a part of national jurisprudence, and therefore federal questions cognizable here."

Conceivably Bullington by coming here in the North Carolina suit might have secured a decision that the North Carolina statute and decision were invalid constitutionally in excluding him from all the state's courts and that the state must afford him a remedy on proof of his substantive claim. But the very multiplicity of the constitutional questions enumerated in the Court's opinion which were or might have been pertinent made that chance slim indeed. What is more important is that if the judgment had been thus reversed and remanded, it would have been

wiped out and he then would have been free to dismiss the suit and start over again in the federal courts sitting in the state or in the state courts. *Bucher* v. *Cheshire R. R. Co.*, 125 U. S. 555, 578–579.[15]

On the other hand, if the case had gone against him here, then his right to start over in the federal court in North Carolina would depend upon whether one of two grounds were accepted for this Court's decision, namely, on the one hand, that North Carolina had power to bar his substantive claim and had done so in effect though not in words, thus closing the doors of the federal court to it under the *Erie* rule; on the other, that the state had power to close its courts against his claim without adjudicating its substantive validity, thus leaving him free to go to the federal court under the *Erie* rule. Either result was a conceivable one, depending on whether the Court should conclude that a "right without a remedy" remains a right, for this purpose, or becomes none at all. But the only chance for Bullington's ultimate success, in the event of adverse deci-

---

[15] "If . . . a judgment has been vacated by the trial court or reversed by an appellate court, it is no longer conclusive between the parties, either as a merger of the original cause of action or as a bar to an action upon the original cause of action . . . ." Restatement, Judgments (1942) 163.

"Ordinarily, after a judgment has been reversed on appeal and the cause remanded, the case stands for trial de novo on the issues properly joined. . . . With respect to the right of plaintiff to take a voluntary nonsuit, it stands in the same relative position which it occupied before the trial in the first instance." *Shell Petroleum Corp.* v. *Shore*, 80 F. 2d 785, 786.

This is the general rule. 89 A. L. R. 109; 126 A. L. R. 305. It would seem to apply in North Carolina. North Carolina follows both the doctrine that the trial court, upon remand by an appellate court, is to proceed as if there had been no previous trial and the doctrine that judgments not on the merits do not constitute an estoppel to subsequent actions. *Hickory* v. *Railroad*, 138 N. C. 311, 318; *Grimes* v. *Andrews*, 170 N. C. 515; cf. Gen. Stat. N. C. (1943) § 1–25, as interpreted in *Grimes* v. *Andrews*, 170 N. C. at 522.

sion here, would have been for the decision to have turned out on the latter ground.

That chance was hardly worth the gamble. For this Court has declared in *Guaranty Trust Co.* v. *York,* 326 U. S. 99, 108–109, that a right without a remedy is no right at all for purposes of enforcement by a diversity suit in a federal court sitting in the state.[16]   And the nature of the North Carolina statute as construed by the state court reaches exactly the result which the *York* case says precludes resort to the federal court on the same cause in a diversity suit.[17]   Indeed this seems to be an alternative basis for the present decision.[18]   Bullington's chance to get to the federal court on such a basis was therefore practically nil.

Should he now be barred because he did not take the extremely remote chance of securing a favorable decision, reversing the state court's judgment and forcing the state to hear his case on the merits?   Not, I think, unless we can say he then would have been forced, if successful, to continue the litigation in the state courts and could not withdraw to start over in the North Carolina federal court. This we could not say unless we were to overrule the *Bucher* case, which Bullington had a right to assume we would not do.   Why he should be barred from doing now, because he did not take his almost hopeless appeal, what he would have been at liberty to do if he had taken it successfully, I am not able to understand.   No sound policy of ending litigation, conserving judicial time or litigants' rights or in any other respect can possibly be served by

---

[16] The *York* case however did not purport to apply or extend the rule to a cause of action arising under and governed by the laws of another state than that in which the federal court was sitting.   But cf. *Klaxon Co.* v. *Stentor Elec. Mfg. Co.,* 313 U. S. 487.

[17] Except for the factor noted in note 16.

[18] See text *infra.*

such a ruling.[19]   Moreover, the very difficulties in his way for securing a successful determination here, which would give him some certain remedy either in the state or in the federal courts, were sufficient reason, in my opinion, to justify his foregoing that dubious procedure and starting over again in the federal court.

The real trouble here is not with the law of *res judicata*, for that law has no valid application to these facts.   It is that the doctrine is used as an escape from facing squarely the real question presented.   This is whether North Carolina's decision made the *Erie* doctrine applicable.   The Court's opinion does state expressly that the effect of the North Carolina decision was to create a policy of the state against the validity of all claims for deficiency judgments, and comes almost but not quite to saying this requires the case to go off on application of the *York* rule.

That issue is inescapable here.   The *Erie* rule did not purport to change the law of federal jurisdiction in diversity cases, taking it out of the hands of Congress and the federal courts and putting it within the states' power to determine.   It purported only to prescribe the rule federal courts should follow in applying the substantive law.   If the North Carolina decision was exclusively a jurisdic-

---

[19] "The application of the principle of res judicata has not in any way been made to depend upon whether the judgment in question is subject to review in another tribunal.   Except in so far as it may affect the question of its finality, as in the case of orders on motions, the fact that a judgment may or may not be appealable should have no bearing upon its effect as res judicata."   2 Freeman, Judgments (5th ed.) 1339.

Thus, there is no doctrine of exhaustion of judicial remedies.   If the judgment of a court goes on jurisdictional grounds, the party may accept it and, instead of appealing, may institute another action where he will not be met by the jurisdictional bar.   Cf. Restatement, Judgments (1942) 194–195; Cook, The Logical and Legal Bases of the Conflict of Laws (1942) 133–135.

tional one, it had no effect on the power of the federal courts in that state to hear controversies excluded by it from the state courts, and the decision neither reached the merits of the controversy "in the sense of the ultimate substantive issues of a litigation" nor barred Bullington from going to the federal court. See *Lupton's Sons Co.* v. *Automobile Club,* 225 U. S. 489. If on the other hand the decision was in effect, although not in words, a determination of the merits in that sense, it both adjudicated Bullington's substantive rights and barred him from maintaining the later suit successfully in the federal court. That question is here and until it is resolved he is deprived of any day in court except to go from one to another without securing decision either on the merits substantially or "on the merits" jurisdictionally.

From the Court's opinion I cannot say whether the question has been resolved. Its discussion of North Carolina's "policy" and its overruling of the *Lupton's Sons* case, *supra,* would seem to indicate that it is applying *York,* though without saying so frankly. But, if so, why speak also of *res judicata?* The law should not be made into such a merry-go-round. Bullington is entitled to one full day in court on the substance of his claim. This he has not had.

I hardly need add that I agree with the views expressed by MR. JUSTICE REED.

MR. JUSTICE JACKSON joins in this opinion.