Irving SLIFKA, Plaintiff,

v.

James W. JOHNSON, formerly Collector of Internal Revenue for the Third District of New York, Defendant.

Abraham SLIFKA, Plaintiff,

v.

James W. JOHNSON, formerly Collector of Internal Revenue for the Third District of New York, Defendant.

United States District Court
S. D. New York.
Dec. 4, 1956.

250

Willkie, Owen, Farr, Gallagher & Walton, Vincent R. FitzPatrick, New York City, Nicholas J. Sheppard, Brooklyn, N. Y., of counsel, for plaintiffs.

Paul W. Williams, U. S. Atty. for the Southern Dist. of New York, New York City, John H. Carroll, Asst. U. S. Atty., New York City, of counsel, for defendant.

McGOHEY, District Judge.

The defendant moves for summary judgments in these actions which have been consolidated for trial.

The plaintiffs are seeking to recover taxes paid pursuant to deficiency assessments levied in October, 1948 for the years 1944, 1945 and 1946. Claims for refund were disallowed. The complaints allege that the assessments were based on "the erroneous finding" that income from a family partnership organized in April, 1943, attributed on its books to relatives of the plaintiffs in each of the years in suit, was income taxable to the plaintiffs. The defendant in its answers pleads estoppel by a prior (1950) judgment [1] of the Court of Appeals for this circuit involving a similar claim by these plaintiffs with respect to the year 1943. The judgment of the Court of Appeals affirmed decisions of the Tax Court [2] rendered in 1949 which had approved deficiency assessments levied against the plaintiffs by the Commissioner of Internal Revenue in 1947 for the year ending December 31, 1943. The Tax Court had decided that a partnership did not exist, " in reality, and for tax purposes," between these plaintiffs and certain members of their families and that profits of the partnership attributed on its books as income to those family members constituted income taxable to these plaintiffs. The plaintiffs contend they are not estopped from relitigating the validity of the partnership for tax purposes for the years in suit for the following reasons: (1) the facts as to those years are separable from those which underlay the prior judgments, and admissible evidence not presented in the former actions will be offered in these and may possibly lead to a different re-

1. Slifka v. Commissioner of Internal Revenue, 2 Cir., 182 F.2d 345.

2. See appendix to petitioner's brief in the above case.

sult; (2) the legal principles which governed the prior Tax Court decision and the judgment affirming it have changed.

The essential facts as found by the Tax Court in the prior suit, are as follows. The plaintiffs, Irving and Abraham Slifka, are brothers who in April, 1943 had been engaged for more than twenty years as co-partners in the manufacture of leather goods. On April 19, 1943, upon their accountant's advice, they formally terminated their old partnership and executed an agreement including as new partners, their wives and Irving's two daughters and son. The assets and liabilities of the old partnership were transferred to the new one. The name of the old partnership, M. Slifka & Sons, was retained. Irving and Abraham each had a 37½% interest in the new partnership, while Abraham's wife had a 12½% interest and Irving's wife and three children each had a 3⅛% interest. Although the business was not in need of new capital, the new partnership agreement provided that each of the wives and children was to contribute capital according to their respective interests. The partnership books reflect that Abraham's wife contributed $50,-000, while Irving's wife and three children each contributed $12,500. These contributions were made possible by gifts from Abraham and Irving, each of whom withdrew $50,000 from the partnership accounts, deposited that amount in his personal account and then executed his personal checks to those in his family who were to become new partners, in the precise amounts of their respective capital contributions. The new partners then endorsed the checks to the partnership. The assets, including cash in bank, and the liabilities of M. Slifka & Sons were no different after than before the formation of the new partnership. Under the new agreement, general management of the business remained vested in Irving and Abraham

and only they were authorized to draw checks and to execute commercial paper. There was no change in the manner of conducting the business, none of the new partners contributing any services except Irving's son, Lewis.[3]

Although the Tax Court made no such specific finding, it is conceded here and the plaintiffs' accountant so testified before the Tax Court, that the partnership was liquidated on January 31, 1946. Moreover the parties have stipulated here that (a) from the inception of the partnership until its liquidation in January, 1946, there was no change in the business relationship of the partners to one another or to the partnership; (b) throughout that period the wives and daughters left in their capital accounts portions of the profits attributed to them on the partnership books; (c) such accumulations are shown in a schedule which was received in evidence as Exhibit 2 in the Tax Court proceeding.

I am unable to agree with the plaintiffs' contention that the decision of the Supreme Court in Commissioner of Internal Revenue v. Culbertson[4] changed the "legal principles which led to the Tax Court decisions and the judgments [of the Court of Appeals] affirming them." The Tax Court, it is true, did not have before it the Culbertson decision, but the Court of Appeals did. Indeed the plaintiffs urged that decision as requiring reversal of the Tax Court. However, as its opinion makes clear, the Court of Appeals considered the Tax Court's decision consistent with the legal principles stated in the Culbertson decision. The plaintiffs now suggest their petitions for review were wrongly decided by the Court of Appeals. The answer to this, of course, is that, having failed to seek review by the Supreme Court, the judgments of the Court of Appeals are final and may not be relitigated here.[5]

---

3. The allocation of profits as income to Lewis was not challenged by the Commissioner for 1943 or for any of the years involved in the instant actions.

4. 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659.

5. Brownell v. Chase National Bank, 77

■■■ The plaintiffs' claims in the instant suits involve different tax periods than were involved in the prior suits and so the "causes of action" are indeed different. Accordingly, it is contended, under the decision in Commissioner of Internal Revenue v. Sunnen [6] collateral estoppel may not be applied here. But as the Supreme Court in that case noted, " * * * where a question of fact essential to the judgment is actually litigated and determined in the first tax proceeding, the parties are bound by that determination in a subsequent proceeding even though the cause of action is different." Certainly, the invalidity of the partnership for tax purposes, was an essential fact litigated and determined in the prior proceeding involving the 1943 tax period. That determination, then, is binding here unless in the years 1944 through 1946, different material facts occurred which were not presented to and considered by the Tax Court in the prior proceeding. The plaintiffs assert there are such facts which may possibly lead to a different result here, and as Parker v. Westover [7] decided, such mere possibility is enough to bar application here of the doctrine of collateral estoppel. The Parker case, however, is clearly distinguishable from these. The new facts in that case occurred not only after the tax period involved in the prior proceeding, but indeed after the decision in that proceeding. Here, as will appear, the so-called new facts, while occurring after 1943, were nevertheless actually presented to and considered by the Tax Court in deciding that the partnership was invalid for tax purposes. The trial in that proceeding was held in 1948 and the decision rendered in 1949. As the record before the Tax Court shows, the partnership had been liquidated January 31, 1946, almost two years before the trial. The plaintiffs introduced as Exhibit 2 before the Tax Court a detailed "Analy-

sis of Partners' Capital Accounts—April 19, 1943 to January 31, 1946." This shows the "opening capital" of each partner on April 19, 1943 and for each year thereafter until January 31, 1946, their respective "withdrawals," "remaining balances" and "share of profits, etc." as well as the final balance due each partner on liquidation. The exhibit was introduced by the plaintiffs' accountant. Counsel for the Commissioner objected to its admission on several grounds of which one was that it related to years subsequent to 1943. The Tax Court received it because it tended, as the Court said, "to show the reality of the partnership and to some extent the purpose of its formation." It is clear therefore that the Tax Court's decision on invalidity was based not only on the facts which occurred in and before 1943 but also on all the material facts which occurred throughout the partnership's existence. The first "new facts" deal with the withdrawals during 1944 and 1945 and on liquidation. It is proposed now to offer testimony that, on liquidation, the wives and daughters actually received the amounts shown on Exhibit 2 to be due them. While it is true that no one so testified specifically in the prior proceeding, this was clearly inferable from the exhibit and the accountant's testimony concerning it. Thus this "new evidence" is at best only cumulative. The second "new fact" is that there was a legitimate purpose unrelated to tax saving in forming the partnership in 1943, namely, to give to Irving's son Lewis a greater incentive to work hard in the business. How or why attainment of this purpose required bringing in also Lewis' mother, sisters and aunt is not apparent. Indeed Abraham's testimony in his deposition taken in these cases, indicates there were other reasons for bringing them in. According to this testimony Popper, the accountant, suggested that Lewis' incen-

S.Ct. 116; Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832.

6. 333 U.S. 591, 68 S.Ct. 715, 721, 92 L. Ed. 898.

7. 9 Cir., 221 F.2d 603–606.

tive would be greater if he were made a partner. Irving agreed, but thought his wife and daughters also should come in, "so as not to make jealousy in the family." Concededly they never took any part in the business. When the matter was presented to Abraham he was agreeable but only on condition that his wife be brought in also, "so everything should be in balance." The only part of all this that is new is that the plaintiffs desired to create an incentive for Lewis. But that is irrelevant since the partnership as to him has not been declared invalid, and the allocation of profits as income to him has never been challenged.

The facts in these cases seem to make application of the doctrine of collateral estoppel peculiarly appropriate. Accordingly the defendant's motions for summary judgment will be granted.

Settle orders.