No. 5122. CHAMBERS *v.* COX, PENITENTIARY SUPERINTENDENT. C. A. 4th Cir. Certiorari denied.

MR. JUSTICE BRENNAN, dissenting.

I dissent. I think we should take this case and decide the important question it presents of the *res judicata* effect of a federal habeas court's determination that evidence used to obtain a state court conviction was improperly admitted because it was the fruit of an unconstitutional search and seizure.

Petitioner was convicted in a Virginia state court of unlawful possession of narcotics seized from his person after his arrest when he entered the apartment of another during a lawful police search of the apartment for narcotics. After exhausting state remedies, he sought federal habeas relief, contending that his mere entry into the apartment provided no probable cause for his arrest and the subsequent search of his person. The parties declined the District Court's offer of a hearing to augment the trial record and stipulated that it contained all the "necessary" facts. The District Court determined on the state record that the police did not have probable cause for petitioner's arrest, and therefore that the narcotics seized from his person had been improperly admitted in evidence. The court ordered petitioner discharged if not retried by the State within 30 days.

Virginia took no appeal from this judgment. Instead, it proceeded to retry petitioner. Over petitioner's objection, the State was allowed to repair the deficiency in its probable-cause case by introducing other evidence available to it but not offered at the first state trial. With the State's case thus buttressed, the Virginia trial court once again found probable cause for petitioner's arrest, and admitted the seized narcotics in evidence.

When the Supreme Court of Appeals of Virginia declined to hear his appeal, petitioner filed the present ap-

plication for federal habeas corpus, contending that the earlier federal habeas judgment was *res judicata* on the issue of probable cause. The District Court, however, viewed the sole question before it as "whether the retrial . . . produced additional evidence weighing on probable cause to lend propriety to the arrest and the subsequent search." Answering that question in the affirmative, the District Court denied the application in an unreported opinion and the Court of Appeals affirmed.

"The doctrine of *res judicata* reflects the refusal of law to tolerate needless litigation. Litigation is needless if, by fair process, a controversy has once gone through the courts to conclusion. . . . And it has gone through, if issues that were or could have been dealt with in an earlier litigation are raised anew between the same parties." *Angel* v. *Bullington,* 330 U. S. 183, 192–193 (1947). Although this Court has decided the question of the application of this principle in cases of the *denial* of habeas relief, see *Sanders* v. *United States,* 373 U. S. 1 (1963), the *res judicata* effect of a habeas judgment *granting* the writ remains a debatable question here. The common law recognized that the reasons which precluded the application of *res judicata* to a *denial* of the writ, were not relevant when a court *granted* the writ: a habeas judgment *granting* the application constituted *res judicata* as to the illegality of the custody and of all issues of law and fact necessarily involved in that result. See, *e. g., McConologue's Case,* 107 Mass. 154, 170–171 (1871). At least one opinion in this Court seems to adopt the same rule: in *Collins* v. *Loisel,* 262 U. S. 426, 430 (1923), Mr. Justice Brandeis, writing for a unanimous Court in a habeas proceeding instituted by a person being held for extradition, said,

"a judgment in *habeas corpus* proceedings discharging a prisoner held for preliminary examination may

operate as *res judicata*. But the judgment is *res judicata* only that he was at the time illegally in custody, *and of the issues of law and fact necessarily involved in that result.*" (Italics supplied in part.)

However, federal and state courts have given varying scope to this pronouncement. Thus, considerable confusion (as evidenced by the present case), has developed over the appropriate scope of the principle of *res judicata* in cases in which the prisoner obtains habeas relief, and over the issues to which it ought properly to apply if it is applicable. Too wide an interpretation of the habeas judgment's scope might deter a State from retrying a prisoner who should properly be brought to account for his actions. On the other hand, failure to give *res judicata* effect to habeas judgments determining as in the present case specific factual issues, may seriously undermine the writ: a State would have no incentive fully to litigate a question in the habeas proceeding if it could always relitigate the question on retrial. Moreover, in the present case, the State offered no reason for its failure to adduce at the first proceeding evidence concededly available at that time. No policy is served—and overburdened judicial resources are wasted—by needless relitigation of issues already fairly decided.

This case thus presents an issue of substantial importance in the administration of federal habeas corpus jurisdiction. It is an issue that will not go away, and we should take this case and decide it now.