**Nick F. DeMARTINO and Jean DeMartino, Plaintiffs,**

**v.**

**Olga SCARPETTA and Spence-Chapin Adoption Service, Defendants.**

**No. 71 Civ. 1596.**

United States District Court, S. D. New York.

April 27, 1971.

Fuchsberg & Fuchsberg, New York City, for plaintiffs.

Joseph Zalk, Zalk, Rubel & Perret, New York City, for defendants.

MOTLEY, District Judge.

Plaintiffs have brought this action for a declaratory judgment that they are entitled to notice of all proceedings in which the right to custody of the child Lenore is involved and that in such proceedings they have a right to be heard. They also seek an injunction enjoining defendants from enforcing the judgment of the Supreme Court, New York County, awarding custody of the baby Lenore to defendant Olga Scarpetta and, pending final determination of this action, enjoining defendants from enforcing said judgment.

Plaintiffs, Mr. and Mrs. Nick F. De-Martino, residents of Brooklyn, New York, acquired custody of the baby from defendant Spence-Chapin Adoption Service (the agency) on June 18, 1970, one month after she was born out-of-wedlock to defendant Olga Scarpetta on May 18, 1970. Miss Scarpetta presently resides in the Borough of Manhattan but is a citizen of a South American country. Plaintiffs had previously adopted a child

from the Spence-Chapin Adoption Service located in Manhattan. They had advised the agency of their desire to adopt another child. The baby Lenore was, therefore, put in plaintiffs' custody by the agency with the understanding that, upon expiration of the probation period, plaintiffs would adopt the baby in compliance with New York law. However, five days after the baby had been placed with plaintiffs by the agency, the baby's natural mother sought to recover her child. She had placed the baby with the agency four days after the baby's birth. Ten days later, she signed a surrender document surrendering the custody of the child to the agency. On June 23, 1970, Miss Scarpetta notified the agency that she desired to have the child returned to her.

After several unsuccessful oral requests to the agency for return of her child during July and August 1970, Miss Scarpetta secured counsel and on September 21, 1970 commenced a habeas corpus proceeding against the agency in the Supreme Court, New York County. The only defendant in that proceeding was the agency. Defendant Scarpetta, as required by New York law, did not know the identity of the persons with whom the agency had placed her child for adoption. The DeMartinos had not yet adopted the child. Although the DeMartinos had been made aware by the agency in October 1970 that the habeas corpus proceeding had been commenced, they did not make application to intervene at that time. The agency resisted the action consequently, and a hearing was held on November 2, 1970 at which time witnesses testified and other evidence was received.

After the hearing, the Supreme Court on November 20, 1970 granted the habeas corpus petition and awarded custody of the child to its natural parent. Plaintiffs then sought to intervene. No action was taken on plaintiffs' motion to intervene by the Supreme Court and aft-

er a certain period of time it was deemed denied.

The agency appealed to the Appellate Division, First Department. Plaintiffs moved to intervene. The motion was denied. The judgment of the Supreme Court was affirmed on January 28, 1971.

Upon appeal to the New York Court of Appeals that court, on April 8, 1971, likewise affirmed the trial court. It held that the record adequately supported the determination that the child's best interests were served by awarding custody to its natural mother who had been found fit and competent and financially able to rear her child. People ex rel. Scarpetta v. Spence-Chapin Adoption Service, 28 N.Y.2d 185, 321 N.Y.S.2d 65, 269 N.E.2d 787 (1971).

The Court of Appeals denied the DeMartino's application to intervene in that appeal but permitted them to file a brief amicus curiae. In denying their application to intervene, the highest court of the State of New York ruled as follows:

"It cannot be doubted that the public policy of our State is contrary to the disclosure of the names and identities of the natural parents and prospective adoptive parents to each other.* Sections 383 and 384 of the Social Services Law [McKinney's Consol.Laws, c. 55] are also reflective of this settled public policy. Since the relationship under section 384 is exclusively between the parent or parents and the adoption agency, and the Legislature has not deemed it appropriate for the prospective adoptive parents to be parties to the proceeding pursuant to section 383, the agency acts as an insulating intermediary, ensuring by the separation of the natural parents and prospective adoptive parents the secrecy necessary to prevent the strife and harassment that could be caused by a parent who insti-

---

* See, e. g., sections 111(4) and 112(4) of the Domestic Relations Law, McKinney's Consol. Laws, c. 14.

tutes a proceeding merely to learn the identity of the prospective adoptive parents.

To allow the prospective adoptive parents to intervene as a matter of right, thereby assuming all the rights of other parties to the action, would necessarily lead to disclosure of the names of the natural parents and prospective adoptive parents to each other. In view of the statutory scheme enacted by the Legislature to guard against such disclosure, and the settled public policy, we are unwilling to hold that the prospective adoptive parents are entitled to intervene." *Id.* at 195, 321 N.Y.S.2d at 73, 269 N.E.2d at 793.

After ruling upon the state law ground, the court then ruled upon the merits of DeMartino's claim that denial of the right to intervene and to be heard violated their federal constitutional right to due process of law guaranteed them by the Fourteenth Amendment to the Federal Constitution.

The Court said:

"Similarly, we find no merit to the contention that the failure to allow the prospective adoptive parents to intervene in the instant proceeding deprived them of due process of law so as to render the court's determination awarding custody of the child to the mother, constitutionally invalid. The prospective adoptive parents do not have legal custody of the baby. Spence-Chapin, the adoption agency, by virtue of the mother's surrender, was vested with legal custody. (Social Services Law, § 383, subd. 2; see, also, Matter of Jewish Child Care Assn., 5 N.Y.2d 222, 229, 183 N.Y.S.2d 65, 156 N.E.2d 700.) The agency, in turn, had placed the baby with the prospective adoptive parents pursuant to an arrangement reached between them, for the purpose of prospective adoption of the child. This arrangement is, of course, subject to our adoption statutes, and in no ways conveys any vested rights in the child to

the prospective adoptive parents. (See e.g., Domestic Relations Law, §§ 112, 114.) It follows, therefore, that, in not being permitted to intervene, they are not deprived of a protected interest, as contemplated by the Constitution." *Id.* 196, 321 N.Y.S.2d 73, 269 N.E.2d 793.

Immediately following the decision of the New York Court of Appeals and before a copy of that Court's opinion was available, the DeMartinos commenced this action on April 8, 1971. They sought and secured a temporary restraining order (Metzner, J.) on the ground that when the remittitur of the Court of Appeals is filed with the Supreme Court, Miss Scarpetta will be able to obtain an *ex parte* order against plaintiffs in aid of enforcement of the judgment of the latter court awarding her custody of her child. A temporary restraining order was, accordingly, entered on April 12, 1971 staying defendants from taking any steps to enforce the order and judgment of the Supreme Court or to remove custody of the child Lenore from plaintiffs until a hearing of plaintiffs' motion for preliminary injunction.

The motion for preliminary injunction came on for hearing before this court on April 20, 1971. At that time, the temporary restraining order was extended for 10 days to give defendant Scarpetta time to submit an additional brief in reply to late papers filed by plaintiffs and until the court could decide the motion.

Defendant Scarpetta opposes the granting of the motion for preliminary injunction and has filed an answer. Defendant Spence-Chapin Adoption Service has not answered and takes no position on the motion for preliminary injunction. By way of affirmative defense, and in her opposing papers defendant Scarpetta alleges *inter alia*, that plaintiffs are estopped from asserting their constitutional claim in this Court, and prays for dismissal of the complaint and denial of the preliminary injunction.

The question whether plaintiffs had a right to be heard in the habeas corpus

proceeding was raised in the state courts. The highest court of the state passed not only on plaintiffs' right to intervene in that action under state law but also passed squarely upon the merits of plaintiffs' federal constitutional claim. Consequently, this court holds that plaintiffs are barred by the doctrine of res judicata from commencing an action in this court in which that same constitutional claim is presented for adjudication. Plaintiffs' remedy is by way of appeal or certiorari to the United States Supreme Court. Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947); Brown v. Chastain, 416 F.2d 1012, 1013 (5th Cir. 1969); Deane Hill Country Club, Inc. v. City of Knoxville, 379 F.2d 321, 325 (6th Cir.1967).[1]

The motion for preliminary injunction is, therefore, denied and the complaint is dismissed.

So ordered.

---

1. The fact that Angel v. Bullington concerned a diversity case is not significant for our purposes. The Supreme Court ruled in *Angel* that the state court had decided a federal constitutional claim. This was a bar to the federal court proceeding not only because of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), but because of the principle of res judicata. Angel v. Bullington, 330 U.S. at 187, 67 S.Ct. 657. See also Hart & Wechsler, The Federal Courts and the Federal System, 668–669 (1953 ed.)