**ALLSTATE INSURANCE COMPANY, an Illinois Corporation, Plaintiff-Appellee,**

v.

**Leonard CHARNESKI, Edwin Charneski, Laverne Gehrt, Bertha Mech, Arthur Mech, and Heritage Mutual Insurance Company, a Wisconsin Insurance Corporation, Defendants-Appellants.**

No. 13076.

United States Court of Appeals Seventh Circuit.

Dec. 19, 1960.

Richard P. Tinkham, of Smith, Puchner, Tinkham & Smith, P. L. Crooks, of Crooks & Crooks, Wausau, Wis., for appellants.

Hiram D. Anderson, Jr., of Peickert, Anderson & Fisher, Stevens Point, Wis., Ralph M. Lauer, Clintonville, Wis., for appellee.

Before HASTINGS, Chief Judge, and KNOCH and CASTLE, Circuit Judges.

HASTINGS, Chief Judge.

Allstate Insurance Company, plaintiff-appellee, instituted this diversity action in the United States District Court for the Western District of Wisconsin. Allstate sought a declaratory judgment that it provided no insurance coverage for the 1950 Ford automobile operated by defendant, Leonard Charneski, at the time of a collision with an automobile driven by defendant, LaVerne Gehrt. Leonard Charneski's brother, Edwin, who claimed ownership of the 1950 Ford, the passengers in the Gehrt automobile, and the insurer of the Gehrt automobile were joined as defendants. A motion by defendants to dismiss the complaint for failure to state a claim upon which relief could be granted was denied. By defendants' answers issue was joined on the question of ownership of the Ford automobile, and the case proceeded to jury trial. The jury found that Leonard Charneski was the owner of the 1950 Ford at the time of the collision, and a declaratory judgment was entered as prayed by Allstate. Defendants moved to alter or amend the judgment or for a new trial. The motion was denied, and defendants appealed.

The contested issues presented by this appeal are:

(1) Whether an action will lie under the federal Declaratory Judgments Act to determine insurance coverage involving an automobile accident in the State of Wisconsin.

(2) Whether there was credible evidence from which the jury could conclude that ownership of the automobile was in Leonard Charneski.

(3) Whether comments, statements and questions by the trial judge or erroneous instructions require a new trial.

We shall first consider the question raised in contested issue No. 1 above set out.

It is conceded that plaintiff could not maintain such an independent action in a Wisconsin state court. This is so because of the holding of the Supreme Court of Wisconsin in New Amsterdam Casualty Co. v. Simpson, 1941, 238 Wis. 550, 555, 300 N.W. 367, 369, wherein it is said:

"Thus, plaintiff under the rule in Wisconsin is directly liable to the injured party if its policy applies. When sued by the injured party it has not only the defense that the insured was not negligent but the defense that the policy did not cover the driver of the car. It is to be emphasized that the latter is not merely a defense against any claims of the insured but a separate and distinct plea in bar to a separate and distinct cause of action asserted by the injured party. Hence, the injured party with a cause of action directly against the insurer is in a real, as well as a technical sense, the principal adversary of the insurance company upon this issue. This makes the situation quite different from the case of the ordinary indemnity or liability policy where the injured party merely resorts to the policy as an asset of the insured. What plaintiff is proposing to do here is to isolate one defense against an injured plaintiff and to try it in advance, leaving undisposed of the issues involving the tortfeasor's negligence. *It is plain from the face of the complaint that a declaration upon this issue would not necessarily terminate the controversy between the insurer and the injured persons. On the contrary, it could easily do what declaratory judgments are designed to avoid: Result in separate trials between the same parties of issues bearing upon the same cause of action and a long delay before the merits of a claim for personal injury could be examined and fully disposed of by a court.* This would contravene the legislative policy heretofore declared by secs. 85.93 and 260.11 which permit the injured party to sue insurer directly and to have all issues determined in a single action." (Emphasis added.)

As is shown in New Amsterdam, unlike the practice in many other states, under Wisconsin statutes, in a negligence action the insurance carrier is made directly liable to the injured party; and the plaintiff in such an action may join an insurance company in any action on account of any claim against the insured. In Elliott v. Indemnity Ins. Co., 1930, 201 Wis. 445, 230 N.W. 87, it was held that the insured was not even a necessary party to an action for damages brought directly against the insurer for the negligent operation of the automobile.

Thus, the Supreme Court of Wisconsin has declared it to be the public policy of that state that an insurance company may not bring a separate declaratory judgment action under the Wisconsin Uniform Declaratory Judgments Act[1] as being in contravention of the legislative policy declared in its direct action statute. Such state policy commands that all issues arising in a negligence action, including insurance policy coverage, be determined in a single action.

In the instant case we are required to determine whether in a diversity action under the federal Declaratory Judgments Act, 28 U.S.C.A. § 2201, a federal district court can assume jurisdiction in contravention of the declared state policy of Wisconsin. The resolution of this question brings into play the applicability of the doctrine of Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

In 1938, the Supreme Court reversed a century of precedent, established in Swift v. Tyson, 1842, 16 Pet. 1, 10 L.Ed. 865, which had held that except where state statutes controlled, the law to be applied in diversity cases was federal common law. The Court, in Erie R. Co. v. Tompkins, held that constitutionally there could be no federal common law establishing rules of decision for diversity cases.[2] Henceforth, the Court stated, the

---

1. Wis.Statutes § 269.56 (1959 ed.).

2. Cf. the federal common law in federal question cases established in Textile Workers Union v. Lincoln Mills, 1957, 353 U.S. 448, 77 S.Ct. 923, 1 L.Ed.2d 972.

rules of decision to be applied in diversity cases were state statutes and state common law. Such a result discouraged forum shopping between the state court and a federal district court sitting in the same state; it promoted uniformity within the state. The basis of the decision was two-fold: First, constitutional theory that Article III of the Constitution gives to federal courts power to "make law" only in those areas which are delegated to federal legislative authority under Article I. Second, the statutory interpretation in Swift v. Tyson of Section 34 of the Federal Judiciary Act, 28 U.S.C.A. § 1652, limiting the definition of "law" to statutes and excluding court-made common law, was reversed.

The Erie decision became characterized as requiring federal courts to apply the substantive law of the state. However, much has been written since 1938 dealing with the complexities of the Erie decision. To a large degree, these decisions have focused on the problem of when it is necessary, under the Erie doctrine, for federal courts to adopt state rules of decision which are concededly "procedural" in other contexts. Such being the case, under the current standards set by Supreme Court decisions, the simple "substantive-procedural" classification will not suffice.

In Klaxon Co. v. Stentor Elec. Mfg. Co., 1941, 313 U.S. 487, 496–497, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477, the Supreme Court held that under Erie, a federal district court must refer to the state's conflict of law rules, rather than apply a "general law" of conflicts. Speaking for the Court, Mr. Justice Reed said:

"We are of opinion that the prohibition declared in Erie R. Co. v. Tompkins, 304 U.S. 64 [58 S.Ct. 817, 82 L.Ed. 1188], against such independent determinations by the federal courts, extends to the field of conflict of laws. The conflict of laws rules to be applied by the federal court in Delaware must conform to those prevailing in Delaware's state courts. Otherwise the accident of diversity of citizenship would constantly disturb equal administration of justice in coordinate state and federal courts sitting side by side. See Erie R. Co. v. Tompkins, supra [304 U.S.] at 74–77 [58 S.Ct. at pages 820–822]. Any other ruling would do violence to the principle of uniformity within a state upon which the Tompkins decision is based. Whatever lack of uniformity this may produce between federal courts in different states is attributable to our federal system, which leaves to a state, within the limits permitted by the Constitution, the right to pursue local policies diverging from those of its neighbors. It is not for the federal courts to thwart such local policies by enforcing an independent 'general law' of conflict of laws. Subject only to review by this Court on any federal question that may arise, Delaware is free to determine whether a given matter is to be governed by the law of the forum or some other law."

In Guaranty Trust Co. v. York, 1945, 326 U.S. 99, 108–110, 65 S.Ct. 1464, 1469, 89 L.Ed. 2079, the Court in examining the effect, under the Erie doctrine, of a state statute of limitations to a federal equity case, recognized the futility of the mechanical approach of applying the labels of "substantive" and "procedural" rules. In this context the observations of Mr. Justice Frankfurter are pertinent:

"Matters of 'substance' and matters of 'procedure' are much talked about in the books as though they defined a great divide cutting across the whole domain of law. But, of course, 'substance' and 'procedure' are the same key-words to very different problems. Neither 'substance' nor 'procedure' represents the same invariants. Each implies different variables depending upon the particular problem for which it is used. * * * And the different problems are only distantly related at best, for the terms are in common

use in connection with situations turning on such different considerations as those that are relevant to questions pertaining to *ex post facto* legislation, the impairment of the obligations of contract, the enforcement of federal rights in the State courts and the multitudinous phases of the conflict of laws. * * *

"Here we are dealing with a right to recover derived not from the United States but from one of the States. When, because the plaintiff happens to be a non-resident, such a right is enforceable in a federal as well as in a State court, the forms and mode of enforcing the right may at times, naturally enough, vary because the two judicial systems are not identic. But since a federal court adjudicating a state-created right solely because of the diversity of citizenship of the parties is for that purpose, in effect, only another court of the State, it cannot afford recovery if the right to recover is made unavailable by the State nor can it substantially affect the enforcement of the right as given by the State.

"And so the question is not whether a statute of limitations is deemed a matter of 'procedure' in some sense. The question is whether such a statute concerns merely the manner and the means by which a right to recover, as recognized by the State, is enforced, or whether such statutory limitation is a matter of substance in the aspect that alone is relevant to our problem, namely, does it significantly affect the result of a litigation for a federal court to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in a State court?

"It is therefore immaterial whether statutes of limitation are characterized either as 'substantive' or 'procedural' in State court opinions in any use of those terms unrelated to the specific issue before us. Erie

R. Co. v. Tompkins was not an endeavor to formulate scientific legal terminology. It expressed a policy that touches vitally the proper distribution of judicial power between State and federal courts. In essence, the intent of that decision was to insure that, in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court. The nub of the policy that underlies Erie R. Co. v. Tompkins is that for the same transaction the accident of a suit by a non-resident litigant in a federal court instead of in a State court a block away, should not lead to a substantially different result. And so, putting to one side abstractions regarding 'substance' and 'procedure', we have held that in diversity cases the federal courts must follow the law of the State as to burden of proof, Cities Service Oil Co. v. Dunlap, 308 U.S. 208 [60 S.Ct. 201, 84 L.Ed. 196], as to conflict of laws, Klaxon Co. v. Stentor [Elec. Mfg.] Co., 313 U.S. 487 [61 S.Ct. 1020, 85 L.Ed. 1477] as to contributory negligence, Palmer v. Hoffman, 318 U.S. 109, 117 [63 S.Ct. 477, 482, 87 L.Ed. 645]. And see Sampson v. Channell [1 Cir.], 110 F.2d 754 [128 A.L.R. 394]; Erie R. Co. v. Tompkins has been applied with an eye alert to essentials in avoiding disregard of State law in diversity cases in the federal courts. A policy so important to our federalism must be kept free from entanglements with analytical or terminological niceties."

Ragan v. Merchants Transfer & Warehouse Co., 1949, 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520, held that when a state service of summons statute is an integral part of the state statute of limitations, *state procedure* on service of

summons, *rather than the Federal Rules of Civil Procedure* [28 U.S.C.A.], is controlling in a diversity case for the purpose of determining when the state statute of limitations is tolled. The Court said, "It is conceded that if the present case were in a Kansas court it would be barred. The theory of Guaranty Trust Co. v. York would therefore seem to bar it in the federal court. * * Since [the] cause of action is created by local law, the measure of it is to be found only in local law." 337 U.S. at pages 532–533, 69 S.Ct. at page 1234.

In Angel v. Bullington, 1947, 330 U.S. 183, 191–192, 67 S.Ct. 657, 662, 91 L.Ed. 832, in a somewhat analogous situation to the case at bar, where the state of North Carolina by statute had closed the door to actions for deficiency judgments, the Court said:

"Secondly, it is most incongruous to attribute to the legislature and judiciary of North Carolina the imposition of a restriction against all its citizens from suing for a deficiency judgment while impliedly authorizing citizens of other States to secure such deficiency judgments against North Carolinians. * * * The essence of diversity jurisdiction is that a federal court enforces State law and State policy. If North Carolina has authoritatively announced that deficiency judgments cannot be secured within its borders, it contradicts the presuppositions of diversity jurisdiction for a federal court in that State to give such a deficiency judgment. North Carolina would hardly allow defeat of a State-wide policy through occasional suits in a federal court. What is more important, diversity jurisdiction must follow State law and policy. A federal court in North Carolina, when invoked on grounds of diversity of citizenship, cannot give that which North Carolina has withheld. Availability of diversity jurisdiction which was put into the Constitution so as to prevent discrimination against outsiders is not to effect dis-

crimination against the great body of local citizens."

In Woods v. Interstate Realty Co., 1949, 337 U.S. 535, 538, 69 S.Ct. 1235, 1237, 93 L.Ed. 1524, the Court reaffirmed the doctrine of Guaranty Trust Co. v. York and Angel v. Bullington, supra, saying again that "[t]he contrary result would create discriminations against citizens of the State in favor of those authorized to invoke the diversity jurisdiction of the federal courts. It was that element of discrimination that Erie R. Co. v. Tompkins was designed to eliminate."

Most recently, in Byrd v. Blue Ridge Cooperative, 1958, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953, the Court reviewed the history of the Erie doctrine. It there held that *assuming* that in a diversity suit there would be a difference in outcome in federal and state decisions, nevertheless federal standards as to the functions of the judge and jury would apply because there was an important *federal* right to be served—the Seventh Amendment right to a jury trial.

In summary, federal courts in diversity cases have applied the Erie doctrine to state conflict of law rules, state statutes of limitations, state burden of proof rules, state precedent as to contributory negligence, state court-closing statutes, and even as in Ragan v. Merchants Transfer & Warehouse Co., supra, to giving precedence to state procedural statutes dealing with service of process over the Federal Rules of Civil Procedure.

The history of the Erie doctrine has been a continual retreat from conclusionary labels or mechanical solutions and an increasing emphasis has been placed on the consideration and accommodation of the basic state and federal policy goals involved. By this standard we must determine this case.

The Erie problem here is clearly raised, and it cannot be solved by characterizing a declaratory judgment action as procedural. The different outcome of this case in a state and federal court

would result in forum shopping, for no such case can be brought in Wisconsin. However, under the Byrd standards, outcome determination is not a mechanical solution. A proper line of inquiry must assess the competing policy goals of the two sovereigns.

First, as to the State of Wisconsin. This is not a case where a federal declaratory judgment action is filed in a state which has no statute providing for such relief. Wisconsin has passed a general statute providing declaratory relief. However, this statute was held not applicable in New Amsterdam because it conflicted with the Wisconsin state policy of providing direct actions against insurance companies. This is a declaration of the *substantive* law of Wisconsin. The Wisconsin Supreme Court held that to allow declaratory relief in such circumstances would undercut its policy of direct actions against an insurance company and thereby concluding the action—defining the rights of the insurer, the insured, and the injured party—in a single suit. This holding represents a legitimate and proper implementation of Wisconsin policy. This specific substantive policy would be seriously weakened if we allow in federal courts that which the state courts disallow.

■ The federal interest to be served here is slight. There is the general interest of a court controlling its own procedure. There is the general policy evidenced by the federal Declaratory Judgments Act. However, no right to jury trial, guaranteed by the Seventh Amendment, is involved here, as in Byrd. The cause of action arising from the accident, the issue of coverage of the policy, and the rights of the insured, the insurer and the injured parties are intimately connected with Wisconsin law and have no connection with the federal government except that the latter provides a fair and orderly forum in which to try the diversity case. Finally, relief under the Federal act is expressly discretionary. Such relief is permissive and not absolute. Declaratory relief "may" be granted, and need not be when it would create an unnecessary federal-state conflict.

Our decision in Tillman v. Great American Indemnity Co. of New York, 7 Cir., 1953, 207 F.2d 588, 594, is not controlling here because of the nature of that case. Tillman, however, does represent the situation envisioned by the Supreme Court of Wisconsin in that all the issues, including negligence and policy defense, were litigated in a single cause of action. Further, in Allstate Ins. Co. v. Moldenhauer, 7 Cir., 1952, 193 F.2d 663, in which this court affirmed the action of a Wisconsin federal district court granting declaratory relief in a situation similar to this, there is no indication from our opinion that the Erie question was presented to the court. Finally, plaintiff relies upon the precedent of Chase Nat. Bank v. Citizens Gas Co., 7 Cir., 1940, 113 F.2d 217, 230. However, the decision there was limited to a holding that a complaint for declaratory relief and a supplemental pleading asking for coercive relief (arising from matters subsequent to the claims presented in the original pleading) were valid under the federal Declaratory Judgments Act and the Federal Rules of Civil Procedure. This was so, even assuming that state decisions excluded coercive relief from actions under state declaratory judgment statutes. However, there was no indication that a specific state substantive policy was vitiated by our decision nor was there any discussion of the effect of the Erie doctrine.

■ There is no overriding federal interest to be served by hearing this diversity action. The district court, sitting as "only another court of the state," should have dismissed this complaint and thereby given effect to Wisconsin state policy authorizing direct actions against insurance companies and commanding the determination of all relevant issues in a single lawsuit.

We hold that the district court erred in denying defendants' motion to dismiss the complaint. In view of this holding we do not reach the questions relating to the merits of the case.

The judgment of the district court is reversed and this cause is remanded with directions to sustain defendants' motion to dismiss the complaint.

Reversed and remanded.