359 A.2d 426

Raymond RADAKOVICH and Alan Frank

v.

Leonard WEISMAN, an Individual and Weiscorp, Inc., a Delaware Corporation, Appellants,

v.

J. J. GUMBERG COMPANY et al.

Superior Court of Pennsylvania.
June 28, 1976.

36

Stanley M. Stein, Pittsburgh, for appellants.

Alan Frank, Frank & Radakovich, Pittsburgh, for appellees.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE and VAN der VOORT, JJ.

HOFFMAN, Judge:

Appellants contend that the lower court erred in finding that the appellants submitted to the *in personam* jurisdiction of the court by filing "various pleadings that in no way address the question of jurisdiction."

The relevant portion of the tortious procedural history of the instant case may be summarized as follows: On May 23, 1974, appellees, Raymond Radakovich and Alan Frank, both attorneys, commenced an action in trespass against appellants, Leonard Weisman and Weiscorp, Inc.,[1] alleging that appellants tortiously interfered with a business relationship between appellees and others. Because appellant-Weisman was an individual residing in New York State, and appellant-Weiscorp, Inc. was a Delaware corporation having its principal place of business in New York State, appellees also filed a writ of foreign attachment naming Aaron Mandel and J. J. Gumberg Company as garnishees. On June 4, 1974, appellees moved to hold garnishee-Mandel in contempt for disposing of property allegedly belonging to appellants, in violation of the writ of foreign attachment. After garnishee reports were filed, a contempt hearing was scheduled for June 18, 1974. While appellant-Weisman was in Pittsburgh to testify at the June 18, 1974 hearing, he was served with a copy of the complaint in trespass.[2]

1. Appellees alleged that appellant-Weisman was "the president, principal officer and sole manager in control of" appellant-Weiscorp, Inc.

2. Apparently, appellant-Weisman was served individually and as president of Weiscorp, Inc. Rule 2180, Pa.R.C.P., provides "(a)

On July 8, 1974, appellants filed preliminary objections which challenged both the manner of service of process and the lower court's venue. Thereafter, on both July 11, 1974, and July 16, 1974, the appellees filed amended complaints. Appellants, on July 30, 1974, refiled their preliminary objections, reiterating their challenges to venue and service of process. Prior to the lower court's ruling on the preliminary objections, appellants also took the following actions: obtained protective orders postponing appellees' attempts to depose appellant-Weisman until the lower court ruled on the preliminary objections, filed notices of depositions of appellees, Frank and Radakovich,[3] and answered appellees' motion to review the denial of their motion for a restraining order against garnishee-Mandel. After argument on the preliminary objections, the court en banc on March 10, 1975, per Zavarella, J.,[4] dismissed appellants' venue challenge, but sustained appellants' challenge to service of process. The lower court held, therefore, that it was without personal jurisdiction over the appellants. No appeal was taken from this order.

Despite the fact that appellants had never been properly served, the appellees continued to litigate. On May 23, 1975, appellees directed the prothonotary to enter a default judgment against the appellants. Appellants' motion to strike this judgment, filed May 30, 1975, was granted that same day. Appellees refiled notices to depose appellant-Weisman, and on June 27, 1975, also moved for sanctions against appellant-Weisman. Concerned over appellees' continued attempts to litigate the

Service of process within the county in which the action is instituted shall be made upon a corporation or similar entity by the sheriff of that county by handing a copy thereof . . . (1) to an executive officer, partner or trustee of the corporation . . . ."

3. The depositions of appellees Frank and Radakovich, however, were never taken.

4. The preliminary objections were argued before Weir and Zavarella, JJ.

case, on July 11, 1975, appellants filed both a petition for declaratory judgment requesting that the lower court declare that the appellants "are not now subject to the general jurisdiction of the Court and that personal jurisdiction over them has not been obtained" [5] and a motion for a protective order staying depositions until the jurisdictional issue is resolved. For the first time on July 14, 1975, appellees, in both their renewed motion for sanctions and their answer to the petition for declaratory judgment alleged that the appellants submitted to the *in personam* jurisdiction of the court by filing various pleadings which in no way addressed the jurisdictional issue.

On July 24, 1975, the lower court, per McLean, J., ordered that the question of personal jurisdiction raised in the declaratory judgment be listed for argument and that appellant-Weisman appear for depositions. On August 8, 1975, appellants filed a petition for modification of this order, which was denied later that day. Finally, on October 15, 1975, the court en banc, per Flaherty, J.,[6] held that the appellants had submitted to the *in personam* jurisdiction of the court by "filing various pleadings that in no way address the question of jurisdiction." This appeal followed.

Appellants argue that the March 10, 1975 order sustaining their preliminary objections conclusively held that *in personam* jurisdiction over appellants did not exist, and further, that their actions subsequent to that order clearly demonstrated an intent not to submit to the court's jurisdiction. Thus, appellants contend that the lower court erred when it held, on October 15, 1975, that

5. The Uniform Declaratory Judgments Act, Act of June 18, 1923, P.L. 840, §§ 1, 5; 12 P.S. §§ 831, 835. The only alternative to filing this petition was to be held in contempt. Because appellants had a court order declaring their status, appellants acted properly in filing a petition for declaratory judgment.

6. The declaratory judgment petition was argued before Watson and Flaherty, JJ.

appellants submitted to the *in personam* jurisdiction of the court.

Primarily, we must determine the effect of the March 10, 1975 order setting aside service of process. Appellants filed preliminary objections to appellees' complaint on July 8, 1974, and to appellees' amended complaints on July 30, 1974, raising questions of venue and service of process. Appellees never filed an answer to appellants' preliminary objections,[7] and a hearing was held on March 10, 1975. At no time did appellees argue that the preliminary objections should be dismissed because appellants had submitted to the court's jurisdiction.

Rule 1017, Pa.R.C.P., requires that jurisdictional issues be raised preliminarily: "(b) Preliminary objections are available to any party and are limited to (1) a petition raising a question of jurisdiction or venue or attacking the form or service of a writ of summons . . . ." Because preliminary objections are "pleadings", see Rule 1017(a), Pa.R.C.P., they "shall be filed within twenty (20) days after service of the preceding pleading." See Rule 1026, Pa.R.C.P. Furthermore, "[a] party waives all defenses and objections which he does not present either by preliminary objection, answer or reply . . . ." See Rule 1032, Pa.R.C.P.[8]

▮ Once a court concludes that it is without jurisdiction, it is without power to hearing the merits of the case. With this in mind, the purpose of the above rules, therefore, is to secure a *prompt* determination of whether the court has jurisdiction to hear the merits of a particular case. In this regard, Rule 1028(c), Pa.R.C.P., provides that ". . . [t]he court shall determine

---

7. Appellees could have filed an answer to appellants' preliminary objections had they desired to: "The pleadings in an action are limited to . . . a preliminary objection and an answer thereto." Rule 1017(a), Pa.R.C.P.

8. Rule 1032, Pa.R.C.P., provides for two exceptions to this waiver rule, neither of which is relevant to the instant case.

promptly all preliminary objections." A necessary corollary to the purpose of these rules, therefore, is that once the issue of jurisdiction is raised, it be totally and completely litigated in one proceeding.[9]

■ In the instant case, appellants' preliminary objections properly raised the issue of personal jurisdiction. Any argument that the lower court possessed personal jurisdiction should have been raised in answer to the preliminary objections or at argument. Appellees, therefore, should have argued that appellants submitted to the court's jurisdiction. It is well-established that a party may waive his objections to personal jurisdiction by consenting to the court's authority: "Jurisdiction of the person may only be obtained, however, through consent, waiver or proper service of process." *Slezynger v. Bischak*, 224 Pa.Super. 552, 553, 307 A.2d 405 (1973). See also, *Crown Construction Company v. Newfoundland American Insurance Co., Ltd.*, 429 Pa. 119, 239 A.2d 452 (1968); *Monaco v. Montgomery Cab Company*, 417 Pa. 135, 208 A.2d 252 (1965); *Kessler v. Cardonick*, 229 Pa. Super. 97, 323 A.2d 378 (1974); *O'Barto v. Glossers Stores, Ltd.*, 228 Pa.Super. 201, 324 A.2d 474 (1974); *Hohlstein v. Hohlstein*, 223 Pa.Super. 348, 296 A.2d 886 (1972). See generally, Goodrich-Amram, *Standard Pennsylvania Practice*, 1976 Supp., Commentary to Rule 1012, at 227; 1 Standard Pennsylvania Practice, *Courts* §§ 49–50 (1960).

■ Appellees, however, did not assert that the lower court had personal jurisdiction over the appellants on this ground. After argument, the lower court on March 10, 1975, set aside service of process and determined that

**9.** Objections to subject matter jurisdiction, however, can never be waived and may be raised at any time. See Rule 1032(2), Pa. R.C.P. See also *Bloom v. Bloom*, 238 Pa.Super. 246, 362 A.2d 1024 (1976).

(J. 1334/1975 filed Feb. 2, 1976.) 1 Standard Pennsylvania Practice, *Courts* § 51.

personal jurisdiction was wanting. This order was a final order as to appellees, see *Zakian v. Liljestrand*, 438 Pa. 249, 264 A.2d 638 (1970), and *Messick v. Gordon*, 434 Pa. 30, 252 A.2d 627 (1969), and therefore, appealable.[10] Because this order was not appealed within 30 days, it represents a final resolution of the issue of personal jurisdiction. See, The Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, art. V, § 502; 17 P.S. § 211.502(a).

Nevertheless, the appellees continued to press forward, completely disregarding the March 10, 1975 order. On May 23, 1975, appellees caused a default judgment to be entered against the appellants;[11] on several occasions appellees attempted to depose appellant-Weisman and when that failed, appellees moved for sanctions against appellant-Weisman. These actions can only be characterized as a deliberate effort to avoid the clear adjudication of the issue of personal jurisdiction. Because appellees consistently disregarded both the letter and the spirit of the March 10, 1975 order, appellants were compelled to file a petition for declaratory judgment seeking a judicial declaration that appellants "are not now subject to the general jurisdiction of the Court and that personal jurisdiction over them has not been obtained."

10. Orders dismissing preliminary objections raising issues of jurisdiction, although interlocutory, are also appealable. See, *Bloom v. Bloom*, supra; *Colvin v. Somat Corporation*, 230 Pa.Super. 118, 326 A.2d 590 (1974); Pa.R.C.P. 1017(b)(1) and 1451(b)(7); The Act of March 5, 1925, P.L. 23 No. 15, 12 P.S. § 672; The Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673 No. 223, Art. III, § 302; 17 P.S. § 211.302. Appeals from these orders, however, must be filed within 20 days. See, The Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673 No. 223, Art. V, § 502; 17 P.S. § 211.502(d).

11. In their praecipe for judgment, appellees alleged that the appellants had not entered a general appearance and that appellants had appeared only to contest jurisdiction. Appellees evidently had a change of heart several weeks later when they alleged, in their answer to appellants' motion for declaratory judgment, that the appellants not only appeared to contest the court's jurisdiction, but also appeared to contest the merits.

In their answer to the petition, appellees alleged that "[t]here is no uncertainty as to the existence of personal jurisdiction over the defendants in view of the many pleadings filed on behalf of the defendants and personal appearances and arguments made on behalf of defendants."

Section 49 of the Restatement of Judgments provides that "[w]here a valid and final personal judgment not on the merits is rendered in favor of the defendant, the plaintiff is not thereby precluded from thereafter maintaining an action on the original cause of action and the judgment is conclusive only as to what is actually decided." This principal is denominated "direct estoppel" by the Restatement. Comment d to § 45 of the Restatement of Judgments notes that "direct estoppel" is, in reality, a limited application of res judicata: "Where an issue is actually litigated and determined in an action, the determination is conclusive in any subsequent action between the parties based upon the same cause of action. Ordinarily, after a judgment is rendered in an action, the cause of action is extinguished by the judgment, and it is immaterial what issues were actually litigated. Where, however, a judgment for the defendant is not upon the merits, the plaintiff is not precluded from maintaining an action on the same cause of action; but in such a case the matter actually litigated and determined in the action is res judicata, and is binding upon the parties in a subsequent action based upon the same cause of action . . . The term 'direct estoppel' is used in the Restatement of this Subject to indicate that the binding effect of a judgment as to matters actually litigated and determined in one action applies to a subsequent action between the parties based upon the same cause of action, where the plaintiff is not precluded from maintaining such an action by the extinguishment of his cause of action under the rules as to merger and bar." See also, *Weigley v. Coffman*, 144 Pa. 489, 22 A. 919 (1891)

(Judgment on a point, not touching the merits of the principal matter in dispute, will, in respect to that point, ordinarily raise an estoppel.) Thus, when the judgment is based on lack of jurisdiction of the court over the defendant, as in the instant case, the plaintiff, while not precluded from maintaining a new action based on the same underlying cause of action, is precluded from relitigating the issue of lack of jurisdiction over the defendant. See comments a and b, § 49 of the Restatement of Judgments.

■ In the instant case, appellants' preliminary objections raised the issue of personal jurisdiction, and the subsequent litigation of the preliminary objections resulted in the March 10, 1975 order holding that personal jurisdiction was wanting. As noted earlier, this order was a final order which appellees did not appeal. Faced with a final order on personal jurisdiction, appellees were "directly estopped" from attempting to relitigate that issue. Further, appellants' actions subsequent to the March 10, 1975 order, which were precipitated by appellees' improper conduct, did not evidence an intent to consent to the court's jurisdiction. Had appellees desired to pursue their legal remedies, their sole recourse was to re-serve the appellants. Thus, the lower court erred when it held, on October 15, 1975, that the appellants consented to the court's jurisdiction by filing various pleadings that in no way addressed the issue of jurisdiction.

Order reversed.