723 F.2d 357
 COMPAGNIE DES BAUXITES DE GUINEE, a corporation, Appellant,
v.
L'UNION ATLANTIQUE S.A. D'ASSURANCES, Vesta (UK) Insurance
Company, and Chiyoda Fire & Marine Insurance
Company, Ltd., Tokyo.
 No. 83-5114.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 12, 1983.
Decided Dec. 22, 1983.
 
 Cloyd R. Mellott, Dale Hershey, Robert W. Doty (argued), Andrew M. Roman, Robert L. Byer, Eckert, Seamans, Cherin & Mellott, Pittsburgh, Pa., for appellant.
 Thomas F. Weis (argued), David L. Beck, Weis & Weis, Pittsburgh, Pa., for appellees.
 Before SEITZ, Chief Judge, GIBBONS and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Chief Judge.
 
 
 1
 Compagnie des Bauxites de Guinee (CBG) appeals from an order of the district court dismissing its complaint based on diversity jurisdiction against three of its insurers for want of in personam jurisdiction, as time barred, and because its loss was not caused by a fortuitous event. It is not suggested that any law other than that of the forum is controlling, and we will therefore apply the law of Pennsylvania. The Court of Appeals has jurisdiction under 28 U.S.C. Sec. 1291.
 
 
 2
 * The parties are not strangers to this court. The events giving rise to this suit and much of the relevant history of the case are reported in a previous opinion, Compagnie des Bauxites de Guinee v. Insurance Company of North America, 651 F.2d 877 (3d Cir.1981), aff'd sub nom Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). We will therefore state only those facts relevant to this appeal.
 
 
 3
 In December of 1975 CBG filed an action in the district court against the Insurance Company of North America (INA) and a number of foreign excess insurers (the excess insurers), including the appellees in this case, in order to recover under an all-risk business interruption insurance policy covering its bauxite mining and processing plant in the Republic of Guinea. In August of 1976 CBG began a series of fruitless attempts to take discovery for the purpose of showing the excess insurers' contacts with Pennsylvania. For the next three years most of the excess insurers repeatedly refused to comply with CBG's discovery requests and the district court's discovery orders.
 
 
 4
 In March of 1979 the excess insurers filed suit in England, seeking to rescind the excess insurance policies. CBG moved to enjoin the excess insurers from proceeding with this action. On April 19 the district court preliminarily enjoined the English suit. It also imposed a sanction against the excess insurers for noncompliance with its discovery orders, pursuant to Fed.R.Civ.P. 37(b)(2)(A), by taking as established the facts which would support in personam jurisdiction. The district court also held that, notwithstanding the sanction, CBG had introduced sufficient evidence to independently establish the court's jurisdiction over all the excess insurer defendants.
 
 
 5
 The excess insurers hired new counsel, who promptly noticed a series of depositions in England in connection with the English suit. These depositions were apparently also intended to show that the excess insurers could not be sued in Pennsylvania. CBG moved for a protective order. The district court granted the order, holding that in personam jurisdiction "shall not be the subject of further discovery, testimony or evidence in this case ...." In November, a permanent injunction hearing was held regarding the English suit. Pursuant to the protective order, neither side introduced new evidence or testimony on jurisdiction at this hearing. The permanent injunction issued in August 1980, the district court holding that it had in personam jurisdiction based on the sanction and on the evidence relating to jurisdiction which was in the record of the preliminary injunction hearing.
 
 
 6
 The excess insurers took an interlocutory appeal to this court. Our review of the permanent injunction included review of its jurisdictional basis. We affirmed the discovery sanction as to all except the three appellees in this case, L'Union Atlantique S.A. d'Assurances (now L'Union Atlantique S.A. de Reassurances) (UNAT); Vesta (U.K.) Insurance Co. (Vesta); and Chiyoda Fire & Marine Insurance Co., Ltd., Tokyo (Chiyoda). We held that the sanctions should not apply to them because they had cooperated with the district court's discovery orders. We further held that the record contained no facts which would sustain a finding of personal jurisdiction as to them, and dismissed them from the suit. The Supreme Court denied CBG's petition for certiorari to review our dismissal of UNAT, Vesta and Chiyoda. 457 U.S. 1105, 102 S.Ct. 2902, 73 L.Ed.2d 1312 (1982).
 
 
 7
 After the district court, 555 F.Supp. 1027, granted the three insurers' motion to dismiss them from the 1975 action, CBG filed a new action against them, based on the same facts and alleging the same cause of action as in the 1975 suit from which they had just been dismissed. The three excess insurers moved to dismiss, claiming that the district court lacked in personam jurisdiction and that our previous dismissal on jurisdictional grounds in the 1981 appeal was res judicata or a collateral estoppel and prevented relitigating the insurers' amenability to Pennsylvania process. The motion to dismiss was twice amended to add defenses based on the running of the statute of limitations and the non-occurrence of a fortuitous event.
 
 
 8
 While the motion to dismiss was pending, CBG directed interrogatories to each of the defendants in order to discover their contacts with Pennsylvania, and the insurers moved for a protective order. The district court neither directed that the interrogatories be answered nor issued a protective order, but in February 1983, it granted the insurers' motion to dismiss. The district court held that our prior dismissal was res judicata and that CBG could not relitigate the jurisdiction issue. In addition, the district court reached the other two grounds for dismissal, holding that CBG's suit was time barred and that no recovery was available as a matter of law because CBG's losses were not caused by a fortuitous event.
 
 II
 
 9
 We first address the district court's holding that our dismissal of the insurers in the 1981 appeal was res judicata as to the new suit against the three excess insurers. CBG argues first, that the principle of res judicata does not apply at all because the merits were never reached in the prior case. Second, CBG argues that any collateral estoppel applies only to the issue actually determined in the prior action, which was whether in personam jurisdiction existed when the first suit was filed in December of 1975. Thus, according to CBG the amenability of UNAT, Vesta and Chiyoda to suit in August of 1982 remains an open question.
 
 
 10
 We agree with CBG that the doctrine of res judicata, or claim preclusion, does not prevent this suit from being brought. The branch of res judicata which the excess insurers would have us apply, and which the district court did apply, is known as bar. Bar is invoked in order to prevent a second suit on a cause of action which has already been decided on the merits. Here the doctrine of bar does not apply because a dismissal for want of in personam jurisdiction is not a judgment on the merits of the cause of action itself. Fed.R.Civ.P. 41(b); see also Restatement of Judgments (Second) Sec. 20(a) and comment c. Since the prior judgment in the district court did not go to the merits, CBG was entitled to file a second suit on the same cause of action. Etten v. Lovell Manufacturing Co., 225 F.2d 844, 846 (3d Cir.1955), cert. denied, 350 U.S. 966, 76 S.Ct. 435, 100 L.Ed. 839 (1956); Thomas v. Furness (Pacific) Ltd., 171 F.2d 434, 435 (9th Cir.1948); Bucholz v. Hutton, 153 F.Supp. 62, 68-69 (D.Mont.1957); Radakovich v. Weisman, 241 Pa.Super. 35, 359 A.2d 426, 430-31 (1976). Cf. Orange Theatre Corp. v. Rayherstz Amusement Corp., 139 F.2d 871, 875 (3d Cir.) (in banc), cert. denied, 322 U.S. 740, 64 S.Ct. 1057, 88 L.Ed. 1573 (1944).
 
 
 11
 The insurers maintain that the prior action did go to the merits of the claim, citing Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947), for the proposition that "the 'merits' of a claim are disposed of when they are denied enforcement." Id. at 190, 67 S.Ct. at 661. Angel did not involve a question of in personam jurisdiction, but rather a litigant's attempt to obtain a deficiency judgment in a North Carolina court in the face of a state statute preventing such a suit from being brought in any court in the state. The litigant challenged the statute in the state courts. The constitutionality of the statute was upheld by the state supreme court, and rather than appeal to the U.S. Supreme Court the litigant instead sought to relitigate the issue in the federal courts. The Supreme Court prevented relitigation of this issue on the ground of res judicata. In Angel the merits were reached, since the merits involved the constitutionality of the state statute. Angel stands for the proposition that where the merits of a suit have been reached, they may not be relitigated, a proposition not disputed by either party. Nothing in Angel, however, can be used as the excess insurers would, to define the in personam jurisdiction issue reached in our prior dismissal as the merits of the suit. Angel v. Bullington is not authority for preventing CBG from bringing the 1982 action.
 
 
 12
 CBG is also correct in arguing that the doctrine of collateral estoppel, or issue preclusion, does not prevent it from litigating the jurisdiction issue in the 1982 suit. For collateral estoppel to apply the parties must have had an opportunity to fully litigate the issue in the prior proceeding. Public Service Mutual Insurance Co. v. Cohen, 616 F.2d 704, 707 (3d Cir.1980); Safeguard Mutual Insurance Co. v. Williams, 463 Pa. 567, 345 A.2d 664, 668 (1975).[1] The district court's orders in the 1975 suit establishing personal jurisdiction and closing the matter to further discovery prevented this. In particular, the order that discovery cease meant that CBG was unable to compile a full record of all insurers' contacts with Pennsylvania, both for the district court's hearing on the permanent injunction and for the appeal to this court. CBG mentions in its brief some contacts by one or another of the insurers with Pennsylvania which it was unable to include in the record in the 1981 appeal. In that appeal we noted that our dismissal of the three excess insurers was based on the facts in the record before us. Now it is asserted that that record was in fact incomplete. We hold that under the circumstances of this case the issue of in personam jurisdiction was not fully litigated in the prior proceedings, and therefore that our dismissal of the insurers in the 1981 appeal has no collateral estoppel effect.
 
 
 13
 The three excess insurers argue that any inability to compile a complete record on jurisdiction traceable to the district court's protective order is actually the fault of CBG, since it was CBG that moved for the order in the first place. Thus, they argue that CBG should have to bear the consequences of the trial strategy it adopted in the 1975 suit. There are two problems with this argument. First, we do not believe it appropriate to charge any litigant with perfect foresight as to the consequences of his trial strategy. This is especially true given the unique way in which the jurisdiction issue was concluded in the district court. Second, CBG did not move for the protective order out of mere whimsy, but did so only to enforce a sanction entered after years of having their discovery requests ignored and the orders of the district court flouted. This court held in the 1981 appeal that the three insurers had cooperated with discovery so that the sanction should not apply to them, and that the English suit could proceed. Nonetheless, in this appeal we cannot say that CBG acted unreasonably in enforcing the sanction by moving for the protective order, under the circumstances as they appeared at the time CBG did so. Because CBG acted reasonably when it moved for the protective order, and because what happened after it did so was unforeseeable, we will not bind CBG to the consequences of its trial strategy by holding it collaterally estopped by the 1981 appeal.
 
 
 14
 Having determined that the district court incorrectly held that the prior suit was barred by res judicata, and that collateral estoppel does not prevent relitigating the jurisdiction issue, we turn to CBG's request that we order the district court to permit them to take discovery on the excess insurers' contacts with Pennsylvania. In International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the Supreme Court stated that the sufficiency of the contacts with the forum depended on whether the cause of action arises from an event or transaction unrelated to the forum. If so, the defendant's contacts with the forum must be qualitatively and quantitatively greater than where the cause of action is forum-related. Id. at 318-320, 66 S.Ct. at 159-160.
 
 
 15
 Pennsylvania's long-arm statutes, which govern service of process in this diversity action, reflect this dichotomy. 42 Pa.Cons.Stat.Ann. Sec. 5101 provides for service of process on a corporation which does continuous and systematic business in the state, regardless of whether the event or transaction sued on took place in Pennsylvania. On the other hand, a single forum-related contact is sufficient to give jurisdiction under 42 Pa.Cons.Stat.Ann. Sec. 5322, but the cause of action must arise out of that contact. CBG has not stated what theory it is pursuing, but it is clear that it must show either that its insurance policies are forum-related, or else that the insurers do so much unrelated business in Pennsylvania that to sue them in a Pennsylvania court would not offend due process.
 
 
 16
 In any action the plaintiff bears the burden of demonstrating contacts with the forum state sufficient to give the court in personam jurisdiction. Where the plaintiff's claim is not clearly frivolous, the district court should ordinarily allow discovery on jurisdiction in order to aid the plaintiff in discharging that burden. Our cases have held as much. See, e.g., Fraley v. Chesapeake & Ohio Railway, 397 F.2d 1 (3d Cir.1968); White-Evans Manufacturers v. Elevator Sales & Service, 543 F.Supp. 398 (E.D.Pa.1982); Strick Corp. v. AJF Warehouse Distributors, Inc., 532 F.Supp. 951 (E.D.Pa.1982). We note also that a Pennsylvania court would normally allow discovery where the plaintiff is attempting to show either "minimum contacts" or that the defendant is "doing business" in the state. Holt Hauling & Warehousing Systems, Inc. v. Aronow Roofing Co., 309 Pa.Super. 158, 454 A.2d 1131 (1983); Laffey v. Lehigh Valley Dairy Co-op., 257 Pa.Super. 45, 390 A.2d 238 (1978). The rule that discovery should be allowed has perhaps been best stated by the Court of Appeals for the First Circuit:
 
 
 17
 A plaintiff who is a total stranger to a corporation should not be required, unless he has been undiligent, to try such an issue on affidavits without the benefit of full discovery. If the court did not choose to hear witnesses, this may well have been within its province, but in such event plaintiff was certainly entitled to file such further interrogatories as were reasonably necessary and, if he wished, to take depositions. The condemnation of plaintiff's proposed further activities as a "fishing expedition" was unwarranted. When the fish is identified, and the question is whether it is in the pond, we know no reason to deny a plaintiff the customary license.
 
 
 18
 Surpitski v. Hughes-Keenan Corporation, 362 F.2d 254, 255-56 (1st Cir.1966). We note also that in the 1975 version of this very case the district court allowed discovery on jurisdiction, and only terminated discovery after the sanction was imposed taking jurisdiction as established. The logic which compelled discovery in the prior case seems equally applicable here.
 
 
 19
 Finally, we address the scope of discovery on remand. The plaintiffs have directed interrogatories to each of the three excess insurers. No response has yet been filed. Defendants have also moved for a protective order objecting to the breadth of the interrogatories. The district court did not rule on this motion prior to dismissing CBG's complaint. This motion will have to be addressed by the district court. The precise scope of discovery to be permitted is left to the sound discretion of the district court, but it must be broad enough to allow CBG to pursue both the "doing business" and the "minimum contacts" theories, at least until one or the other is conclusively ruled out. See Fraley, 397 F.2d at 3.
 
 III
 
 20
 The district court also found that CBG's claim against the three excess insurers was time barred because it was not filed within one year of the inception of the loss, as required by the insurance contract.[2] CBG responds that the 1975 suit was timely filed, and that the 1982 suit was timely by virtue of Pennsylvania's "savings statute," 42 Pa.Cons.Stat.Ann. Sec. 5535. This statute provides, in pertinent part, that when an action is timely filed and is not concluded on the merits, except in certain cases not relevant here, a second suit filed within one year of the first will be timely. The district court, however, held that this statute did not apply to a situation where the time to file suit is controlled by the parties' contract rather than the statute of limitations.
 
 
 21
 We are compelled to reverse the district court's holding that CBG's suit was not timely filed because disputed issues of fact as well as undecided questions of law prevent a dismissal on this ground, at least at this time.[3] The district court's opinion discusses only the applicability of the Pennsylvania savings statute. Without indicating any view as to the correctness of the conclusions of law reached by the district court, we note that the applicability of the savings statute is really the final step in a multi-part inquiry into the timeliness of CBG's suit.
 
 
 22
 The first step in the inquiry is to decide whether the 12-month provision is even a part of the contract of insurance. It appears as lines 157-161 of the cover sheet of the business interruption insurance policy issued by INA and adopted "as far as applicable" by the excess insurers. The cover sheet is actually INA's standard form fire insurance policy. The language in lines 157-161 is required by statute to be included in every fire insurance policy issued in Pennsylvania, but this statute expressly does not include all-risk policies such as the one at issue here. 40 Pa.Stat.Ann. Sec. 636(2), (3). The cover itself states that the policy of which it is a part does not cover business interruption. On the other hand, the cover sheet does include some essential terms, such as the extent of coverage, the premium charged, and the dates during which the policy is in force. In determining whether the 12-month limitation is a part of the contract, relevant facts in dispute include whether any industry custom covers the inclusion of provisions such as the 12-month limitation, and the extent to which the terms of the policy were negotiated.
 
 
 23
 If the district court finds that the 12-month provision is part of the insurance contract, the next step is to determine whether the suit was filed after the 12month period expired. This, too, involves numerous disputed issues of fact as well as unanswered questions of law. The first question is whether the one year period begins to run from the date of the event giving rise to the business interruption or from the date of the business interruption itself. As to the excess insurers, there is a question whether the period begins to run only when the business interruption loss is great enough--in this case, over $10 million--to involve the excess layer. None of these dates is determinable on the record before us. Until the date from which the 12-month period runs is identified, it also cannot be determined whether several extensions of time given by INA effectively extended the time for CBG to file suit. If so, an additional question is whether INA's extensions also bound the excess insurers.
 
 
 24
 A third intermediate step not addressed by the district court involves whether, assuming the 12-month period applies and that CBG has not filed suit within that time, Pennsylvania law recognizes any impediment to enforcing the 12-month bar. In particular, the district court did not address the applicability of Brakeman v. Potomac Insurance Co., 472 Pa. 66, 371 A.2d 193 (1977), in which the Pennsylvania Supreme Court refused to enforce a notice of loss provision absent a showing that the insured's failure to comply with the provision prejudiced the insurer. The Pennsylvania Supreme Court has not yet ruled on the applicability of Brakeman to a 12-month provision not required by statute to be included as part of the policy.
 
 
 25
 Once the intermediate steps not addressed by the district court are thus outlined, it is evident that it was premature to reach the issue of the applicability of the savings statute, much less to grant a motion to dismiss on that basis. Nor can we say that the district judge must have decided these issues implicitly, since we have found in any event that he could not properly do so on the basis of the record before him.
 
 IV
 
 26
 The district court, as a third ground for dismissal, held that no recovery was possible as a matter of law because CBG's loss was not caused by a fortuitous event.[4] The district judge incorporated by reference his opinion in a companion case, Compagnie des Bauxites de Guinee v. Insurance Company of North America, 554 F.Supp. 1080 (W.D.Pa.1983), which involves the identical fortuitous event issue. In an opinion filed today, we have reversed the district court on the fortuitous event issue in that companion case. Compagnie des Bauxites de Guinee v. Insurance Company of North America, 724 F.2d 369. For the reasons stated in that opinion, which we incorporate here by reference, we hold that the district court erred in holding that no fortuitous event had occurred.
 
 V
 
 27
 The judgment of the district court will be reversed and the case remanded to the district court for further proceedings consistent with this opinion.[5]
 
 
 
 [1]
 It is not suggested by either party that we should apply the federal rule of collateral estoppel rather than the Pennsylvania rule. We would reach the same conclusion under either rule
 
 
 [2]
 Although the district judge held that the court had no in personam jurisdiction over the three insurers, he nonetheless reached this issue as well. Normally we would not address this issue at this stage in the litigation, since in personam jurisdiction has not yet been established. However, because the district court reached the issue and may do so again on remand, we believe that the efficient administration of justice calls for us to address the merits of this issue to the extent they were reached by the district court
 
 
 [3]
 In the proceedings against INA and the excess insurers not dismissed in the 1981 appeal, the district court determined that disputed issues of fact identical with those identified here prevented the court from granting summary judgment on the ground that CBG's suit was time barred. In our opinion reviewing the decision in this other case, also filed today, we have held that the district court correctly refused to grant summary judgment on this ground. Compagnie des Bauxites de Guinee v. Insurance Company of North America, 724 F.2d 369
 
 
 [4]
 See supra footnote 2
 
 
 [5]
 CBG requests that, should we return this case to the district court for further proceedings, in the exercise of our supervisory power we direct that those proceedings be before a different judge because it alleges that the district judge demonstrated a lack of impartiality. We are not satisfied that the requested exercise of our supervisory authority is required to assure impartiality in the proceedings on remand