621 A.2d 1074

**Herbert E. WEEAST and Marlene Weeast, Husband and Wife**

v.

**BOROUGH OF WIND GAP, Commonwealth of Pennsylvania, Department of Transportation, Robert Rissmiller and Sally Rissmiller, Husband and Wife.**

**Appeal of BOROUGH OF WIND GAP, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Dec. 15, 1992.

Decided Feb. 5, 1993.

David J. Ceraul, for appellant.

Dennis A. DeEsch, for appellees.

Before COLINS and McGINLEY, Judges, and NARICK, Senior Judge.

COLINS, Judge.

The Borough of Wind Gap (the Borough) appeals from a January 8, 1992 order of the Court of Common Pleas of Northampton County (Common Pleas) directing the Borough to comply with the terms and conditions of a September 25, 1990 "Judgment at Bar" and ordering the Borough to pay $100.00 to Herman and Marlene Weeast (Weeast) for each and

every calendar day after May 19, 1992, on which the Borough has not complied. We affirm.

This appeal originates from a settlement agreement reached between Weeast, the Borough, and the Commonwealth of Pennsylvania [1] to end a dispute over damage done to Weeast's real property by flooding runoff water from both the Borough's and the Commonwealth's property. Common Pleas adopted the settlement agreement by entering a September 25, 1990 "Judgment at Bar." The "Judgment at Bar" ordered the Borough to pay Weeast $2,000 and take appropriate measures to redirect the water flow away from Weeast's property. These appropriate measures were set out in the "Judgment at Bar" as follows:

Two, Defendant, Borough of Wind Gap, agrees to undertake forthwith all necessary measures to interdict the flow of water on the Plaintiff's property from the pipe underlying LR48088 at station 60 + 30, and for that stated purpose; one, borough will be permitted to make all applications necessary to receive Commonwealth grants for the stated purpose; two, borough will apply for all Commonwealth permits necessary to effect the location, extension, redirection or other alleviation of the water flow problem on the Plaintiff's [Weeast's] land for the placement of lead pipes or on redirection of water courses necessary to effect the stated purpose; three, regardless of state grants, the flow interdiction shall be effected on or before December 31, 1991.

The "Judgment at Bar" temporarily resolved the dispute. On October 18, 1991, however, the Borough filed a petition to open the "Judgment at Bar" and modify the settlement agreement. The Borough argued that it would be unable to complete the repairs by the December 31, 1991 deadline. On January 8, 1992, Common Pleas granted the Borough an extension, until May 19, 1992, to complete the repairs. Com-

1. This appeal concerns only the portion of the "Judgment at Bar" pertaining to the Borough and its legal obligations pursuant to Common Pleas' order. The Commonwealth of Pennsylvania is not a party to this appeal.

mon Pleas further ordered that if the Borough failed to complete the repairs by the May 19, 1992 deadline, the Borough would have to pay Weeast $100 for each calendar day that the repair work was not done.

The Borough filed exceptions to Common Pleas' January 8, 1992 order. On May 18, 1992, Common Pleas dismissed the Borough's exceptions and directed the Borough to comply with the previous January 8, 1992 order. Common Pleas also delayed institution of the $100 per day fine to Weeast until June 19, 1992. The Borough appeals to this Court for review of Common Pleas' order.[2]

Preliminarily, for the purposes of our discussion, we determine that the term "Judgment at Bar" used by Common Pleas should be appropriately referred to as a consent decree, as is consistent with standard Pennsylvania practice. We hereafter refer to the "Judgment at Bar" as "the consent decree."

 A consent decree is "an agreement between the parties to an equity action and, in essence, is a contract which is binding with the same force and effect as if a final decree had been rendered after full hearing on the merits." 14 Standard Pennsylvania Practice 2d § 79:158 (1983).

 The law concerning consent decrees is well defined. Where a decree in equity is entered by the consent of the parties, it is binding upon the parties until they choose to amend it. *Dravosburg Housing Association v. Dravosburg Borough,* 71 Pa. Commonwealth Ct. 144, 454 A.2d 1158 (1983). A court has no authority to modify or vary the terms of a consent decree in the absence of fraud, accident or mistake. *Universal Builders Supply, Inc. v. Shaler Highlands Corporation,* 405 Pa. 259, 175 A.2d 58 (1961).

On appeal from the consent decree, the Borough raises three issues:

**2.** "Our scope of review in equity matters is limited to determining whether the trial court committed an error of law or abused its discretion." *Bristol Township v. Lower Bucks County,* 130 Pa.Commonwealth Ct. 240, 245, 567 A.2d 1110, 1112 (1989).

## I. DOES THE SUNSHINE ACT PROHIBIT ENFORCEMENT OF THE SETTLEMENT AGREEMENT ADOPTED BY THE CONSENT DECREE?

The Borough asserts that Common Pleas erred in requiring the Borough to complete the water diversion project, because the Borough was bound by the consent decree without the knowledge, approval, or ratification of the Borough Council. The Borough alleges that an attorney for the Borough's insurance carrier made unauthorized assurances that the Borough would undertake the remedial measures that were required by the consent decree.

The Borough's legal position is based on the provisions of the Sunshine Act,[3] which generally protects the right of the public to witness the governmental decision making process. The Borough asserts that its action of entering into the consent decree without ratification or approval of the Borough Council is a violation of Section 4 of the Sunshine Act, 65 P.S. § 274.[4] The Borough's novel argument is that its own violation of the Sunshine Act allows the Borough to renege on the settlement agreement it made with Weeast and refrain from making the repairs directed in Common Pleas' January 8, 1992 order.

First, the Borough may not use its own alleged violation of the Sunshine Act to nullify the provisions of a consent decree. The Borough's position is clearly against the intent of the Sunshine Act and against public policy. Allowing the Borough to nullify its own agreements by invoking the Sunshine Act would give government agencies an escape hatch to renege on any agreements they do not wish to honor and would give them an incentive to violate the Sunshine Act in order to preserve such an escape hatch, thereby encouraging duplicity in litigation before the courts of the Commonwealth.

3. Act of July 3, 1986, P.L. 388, 65 P.S. §§ 271–286.

4. Section 4 of the Sunshine Act states: "Official action and deliberations by a quorum of the members of an agency shall take place at a meeting open to the public unless closed under section 7, 8 or 12."

■ Second, the Borough has not proved a violation of the Sunshine Act. The Borough has alleged that its insurance carrier, through counsel, made unauthorized assurances that the Borough would undertake measures to remedy flooding of Weeast's property. If this allegation is true, then the action to be examined under the Sunshine Act is the Borough's contract with its insurance carrier. The consent decree was a product of the insurance carrier's legal representation of the Borough in accordance with the insurance contract. Since the Borough has represented that this contract was deliberated upon at a meeting of Borough Council open to the public, it is apparent that the Borough has not violated the Sunshine Act.

## II. CAN COMMON PLEAS DIRECT THE BOROUGH TO COMPLETE THE WATER DIVERSION PROJECT?

The Borough argues that Common Pleas erred in directing the Borough to complete the water diversion project, because the Borough's engineering work has not been completed, and no permits have been issued by the Pennsylvania Department of Environmental Resources (DER). The Borough insists that it is in a "catch 22", because it is forced either to violate state law and do the repair work without permits from DER, or to risk contravening Common Pleas' order to make the repairs or face a $100 fine for each day the repairs are not made.

■ The Borough's argument glosses over two important facts. First, it placed itself in this catch 22 by agreeing to get the permits from DER, and complete the repairs.[5] Second,

---

5. When making this statement, this Court is cognizant of the Borough's contention that its insurance carrier, through counsel, improperly made assurances that the Borough would undertake the water diversion project. However, the Borough cannot dispute the fact that the counsel provided by its insurance carrier was the legal representative of the Borough. The Borough's contention is contrary to the long held presumption that what an attorney does in the course of his representation of a client is presumed to be by the authority of his client. *Board of Supervisors, Township of Bensalem v. DiEgidio*, 40 Pa.Commonwealth Ct. 209, 396 A.2d 920 (1979).

the Borough has already had approximately two years to get the permits and complete the project it agreed to complete.

The Borough presents no justification to this Court for its delay in making the repairs. Instead, after using the settlement agreement and litigation in Common Pleas to delay the repair project for almost two years, it now seeks to renege on the agreement by claiming it has no obligation to perform and should not be forced by the courts to perform. In view of the Borough's failure to justify its delay in performance, any failure to procure the necessary permits must be imputed against the Borough.

 Common Pleas had the authority to order the Borough to comply with the consent decree. A consent decree binds parties with the same effect as a final decree issued after a full hearing on the merits. *Pennsylvania Human Relations Commission v. Ammon K. Graybill, Jr., Inc. Real Estate,* 482 Pa. 143, 393 A.2d 420 (1978). Therefore, Common Pleas did not err when it ordered the Borough to complete the water diversion project, despite the difficulties the Borough now faces in doing so. The law is clear that, unless a consent decree was the result of fraud, accident or mutual mistake, it must stand even if it subsequently appears unfair or unreasonable. *Williams v. Salem Township,* 92 Pa.Commonwealth Ct. 634, 500 A.2d 933 (1985), *petition for allowance of appeal denied,* 516 Pa. 615, 531 A.2d 781 (1987). Since the Borough has not alleged fraud, accident or mistake, the terms of the consent decree were properly enforced by Common Pleas.

### III. DID COMMON PLEAS ERR BY IMPOSING A FINE UPON THE BOROUGH FOR NOT COMPLETING THE PROJECT ON TIME?

 The Borough argues that Common Pleas abused its discretion by imposing a $100 per day fine on the Borough without finding that the Borough had violated the provisions of the consent decree. However, the Borough has not preserved this issue for appeal before this Court. The Borough's exceptions to Common Pleas' January 8, 1992 order, which imposed the $100 a day fine, raised the issues previously

338

discussed in this opinion but did not contest the fine the Borough would have to pay if the repairs were not complete in May of 1992. Weeast argues that because the Borough did not take exception to the fine below, the Borough may not raise the issue on appeal to this Court. We agree. Issues not raised in the lower court are waived and may not be raised for the first time on appeal. *Fatzinger v. City of Allentown,* 140 Pa.Commonwealth Ct. 62, 591 A.2d 369 (1991), *petition for allowance of appeal denied,* 529 Pa. 653, 602 A.2d 862 (1992). The Borough's objection to the $100 per day fine is, therefore, waived.

Accordingly, based on the foregoing discussion, the order of Common Pleas is affirmed.

## ORDER

AND NOW, this 5th day of February, 1993, the order of the Court of Common Pleas of Northampton County in the above-captioned matter is affirmed.