## Breinig v. Walker

*Michael A. Snover,* for plaintiff.
*William H. Bayer,* for Newburg Walker, R.W. Walker, C.J. Rodgers.
*Charles C. Hansford,* for Chiapetta and BAI.
*James J. Dodd-o,* for Pa. Turnpike Commission.
*Richard G. Fine,* for Aetna Life Casualty.
*Steven Roth,* for Department of Transportation.

LAVELLE, *P.J.,* October 5, 1995—Before the court are the preliminary objections of defendants, Frank Chiapetta and Blasting Analysis International, attacking this court's jurisdiction over them for lack of personal service. The docket entries establish that Chiapetta and BAI were not served with the original writ of summons. It is also undisputed that service of the complaint on Chiapetta by certified mail in September of 1991 was defective. Plaintiff and the other defendants contend that Attorney Ronald Clever's participation and activities in the case on behalf of Chiapetta and BAI over a period of more than two years constituted a waiver of personal service on his clients and, therefore Chiapetta and BAI impliedly consented to this court's jurisdiction. We ordered depositions pursuant to Pa.R.C.P. 209 and have now had the benefit of thoroughly reviewing the depositions of Ronald Clever and Frank Chiapetta and the briefs and arguments of counsel.

Resolution of the issues raised by counsel involves a careful analysis of the conduct and activities of defendants' counsel and therefore requires an extensive factual recitation.

## STATEMENT OF FACTS

Plaintiffs, Kevin and Sarah Breinig[1] brought this lawsuit for damages to their residence allegedly caused by dynamiting activities at the nearby Lehigh Tunnel of the Pennsylvania Turnpike. BAI is a corporation owned and operated by Chiapetta. Chiapetta and BAI provided blasting designs and plans for the demolition work used in the construction of the 1990 addition to the Lehigh Tunnel.

Breinigs began their lawsuit by filing a praecipe for writ of summons on May 6, 1991. On May 10, 1991, the Sheriff of Carbon County deputized the Sheriff of Lehigh County to serve the writs of summons on Chiapetta and BAI. On May 17, 1991, the Lehigh County Sheriff made returns of service which noted that the defendants were "not found." These returns were filed in Carbon County on October 7, 1991.

Breinigs filed their complaint on September 3, 1991. Chiapetta received a copy of the complaint by certified mail sometime in September of 1991. Thereafter, Chiapetta handed over the complaint to Attorney Ronald Clever and asked him for advice about what should be done about the lawsuit. Clever had been representing Chiapetta and BAI generally from the early fall of 1985. He was also defending them in two other Carbon County cases arising out of their blasting design work on the Lehigh Tunnel Project.[2] Clever told Chiapetta to do

---

1. According to a suggestion of death filed on August 24, 1993, Kevin Breinig died on December 27, 1992. The suit continued in the name of Sarah Breinig alone as the surviving spouse.

2. *Kathryn Bauer v. Frank Chiapetta and BAI* filed to 91-1672, on July 26, 1991; *Harvey G. Haydt and Marie P. Haydt v. Frank Chiapetta, BAI,* filed to 91-2221 on September 23, 1991. Personal service was made on defendants in these cases, but Clever never entered his appearance nor filed any pleadings.

nothing because Chiapetta was not properly served. Specifically, Clever stated "From the very first moments of handling the case, I was careful to not do anything that subjected Frank or his corporation, Blasting Analysis, to jurisdiction of the Court of Common Pleas in Carbon County . . . to be absent, never appear at a deposition, never file a pleading, never file an appearance, never ask for discovery, never respond to discovery. . . ." (Clever deposition at 13, 14.)

Despite this admonition, here is what Clever did:

(1) In September of 1991 shortly after Breinigs' complaint was filed, Clever made contact with Jessie Smith, an attorney from the office of the attorney general as well as Richard Fine, representing Aetna, and an attorney representing the Turnpike Commission. All of these attorneys represented defendants involved in the instant lawsuit. During his discussion with Attorney Fine, Clever inquired how Attorney Fine's client was served with process and Fine told Clever about an expert witness report that Aetna had in its possession.

(2) Also in September of 1991, Clever initiated a telephone call to Attorney William Bayer, attorney for defendant Newburg, Walker & Rodgers, and relayed the information about Fine's expert witness report to him.

(3) In addition to talking to Attorneys Fine and Bayer, Clever monitored Breinigs' case docket in the prothonotary's office by phone and by obtaining printouts of docket entries to find when and if anyone was entering appearances for the other defendants and if personal service was made on Chiapetta and BAI.

(4) A "mountain" of legal documents was served upon, received and accepted by Clever. (Clever depo-

sition at 24.) The legal documents included answers to amended complaint and new matter with notices to plead, copies of interrogatories, answers to interrogatories, answers to request for production of documents, entry of appearances, all of which were generated either by plaintiffs or the other defendants. (Affidavit of William H. Bayer, Esquire and Breinigs' motion for sanctions.) Clever also received case information from attorneys through phone calls and letters. Clever also received notices of depositions and in one instance, when Clever was called on the telephone and asked if a particular date was acceptable for a deposition, he replied that he had no objection.

(5) Clever stated that it would not be unusual for Attorney Bayer and him to talk about Breinigs' case and the *Bauer* and *Haydt* cases at the same time. Clever also said that at least twice a year he spoke to Attorney Bayer regarding all three of the Lehigh Tunnel cases. Clever broached the subject with Attorney Bayer about getting a release from Mrs. Breinig in exchange for some money.

Again on July 30, 1993, Clever and Bayer discussed all three of the Lehigh Tunnel cases including Breinigs' case. Additionally, Clever wrote to Attorney Bayer on August 3, 1993:

"Please call or write to me to let me know whether you will be able to get rid of the one remaining case (the Breinigs' case) for nuisance value also. For example, have the plaintiffs ever answered your expert interrogatories? Did the death of one of the plaintiffs have any effect on the trial settlement strategies or motivations of the widow?" (Clever deposition at 44 citing paragraph no. 19 of Attorney Bayer's affidavit.)

On October 13, 1993, Clever, while discussing the *Bauer* and *Haydt* cases with Attorney Bayer, inquired whether there had been any further developments on the "larger of the three cases," meaning Breinigs' case. (Clever deposition at 40-44 citing paragraph no. 14 of Attorney Bayer's affidavit.)

(6) On August 20, 1993, Michael Snover, attorney for Breinigs, served interrogatories, expert witness interrogatories and request for production of documents on all defense counsel including Clever. On September 21, 1993, Snover wrote to Clever asking him to respond to his discovery requests. When no response was made, Snover filed a motion to compel, and on March 10, 1994, this court issued an order on Chiapetta, BAI and the other defendants to respond to the discovery requests or suffer the risk of sanctions. Snover filed a motion for sanctions on July 19, 1994 and a hearing on the motion was scheduled for October 11, 1994. The record does not reveal how Chiapetta learned of this hearing, but before the hearing, he called Attorney Bayer and asked him to represent his interests and inquired of Bayer whether his case could be settled.

(7) After discussions and correspondence with Attorney Bayer from February of 1993 to August of 1993, the *Bauer* and *Haydt* claims against Chiapetta and BAI were settled in August of 1993 when Clever sent Attorney Bayer $1,000 to obtain releases for his clients. But Clever's discussions with Attorney Bayer about settling Breinigs' case continued. Clever asked Attorney Bayer to include Chiapetta and BAI in any settlement because if Chiapetta and BAI paid consideration for a release, it would prevent any of the defendants from bringing another lawsuit later against his clients for contribution.

(8) Clever asserts he still has an attorney-client relationship with Chiapetta and he still represents him in the Breinigs' case:

"As far as I'm concerned, I still do. I never represented him of record. I advised him—I advised him in this case and to this moment, I advised him in this case. As far as I'm concerned, I still do represent him. If the verb represent means to advise, to have an attorney/client relationship, I still have an attorney/client relationship with Frank as to this case because it's the only case that I haven't handed over completely to someone else. Now that Mr. Hansford's in, perhaps he takes a small affront that I still represent when he does. I do have an attorney/client relationship with Frank. If you guys send me more mail, I'll keep receiving it." (Clever deposition at 55.)

Chiapetta claims that Attorney Brian Joyce took over all of his legal business except the Breinigs' case, but he did not know when. He further stated that not only does Clever not represent him anymore, Clever was never authorized by him to receive correspondence or make or discuss any settlements in Breinigs' case. He was so authorized in the *Bauer* and *Haydt* cases.

On October 24, 1994, Attorney Charles C. Hansford entered his appearance for Chiapetta and BAI and filed the instant preliminary objections.

## DISCUSSION

Initially, we address Chiapetta's claim that Clever was not acting as his counsel nor was he authorized to so act.

It is hornbook law that what an attorney does in the course of representing a client is presumed to be with the authority of his or her client. *Weeast v. Borough of Wind Gap,* 153 Pa. Commw. 330, 621 A.2d 1074 (1993); *Miller v. Preston,* 154 Pa. 63, 25 A.2d 1041 (1893). Here there is also abundant evidence that Chiapetta actually authorized and approved Clever's activities.

Chiapetta's and Clever's testimony positively establishes that an attorney-client relationship in fact existed between them from the beginning of this case and exists to this date; that Clever had a long-standing attorney-client relationship with Chiapetta since 1985; and that he represented Chiapetta and BAI in the *Bauer* and *Haydt* cases. Chiapetta, after he received the complaint in the instant case, took it to Clever, was counseled by Clever, followed his advice and was billed for Clever's legal services. Further, Clever held himself out to all counsel in this case as attorney for Chiapetta and BAI, obtained information on their behalf, discussed their defense with other counsel and made continuous efforts to protect his clients' interests. We reject Chiapetta's contention of no authority to act as counsel as a convenient afterthought to evade this court's jurisdiction.

We now turn to the question whether Clever's off-the-record participation in this case over a period of two years was substantial enough to constitute a waiver of the defective service.

It is a well established principle that a party may waive objections to personal jurisdiction by consenting to the court's authority. *Radakovich v. Weisman,* 241

Pa. Super. 35, 41, 359 A.2d 426, 429 (1976). For a waiver to occur, a party must take some action going to the merits of the case which evidences an intent to forgo objection to the defective service. *O'Barto v. Glossers Stores Inc.,* 228 Pa. Super. 201, 205, 324 A.2d 474, 476 (1974). "[W]here the court finds that a [party] has performed some act which unconditionally accepts the jurisdiction of the court . . .", a waiver will be found. *Hohlstein v. Hohlstein,* 223 Pa. Super. 348, 351, 296 A.2d 886, 888 (1972); see also, *Monaco v. Montgomery Cab Co.,* 417 Pa. 135, 208 A.2d 252 (1965).

The record here persuades us that Clever's multi-faceted activities on behalf of his clients, although off-the-record, were calculated to protect and defend his clients' interest in this case. They were designed to produce a release of liability for his clients for the least amount of money in legal fees and settlement funds without any direct contact with Breinigs' counsel and by inveigling other defense counsel to do the work. He gave legitimacy to his role as defense counsel in the instant case by his active participation in the *Bauer* and *Haydt* cases and openly wielding the ultimate defense weapon—settlement power. He discussed defenses with the other defense counsel and wrote letters on his clients' behalf. He monitored the court docket and obtained printouts of docket entries. By never telling anyone his clients were not legally in the case and letting everyone believe that they were, he lured a great deal of valuable trial information from the other attorneys both through the mail and by phone, and relayed it to other defense counsel. This shadowy tactic also enabled him to obtain, for the benefit of his clients,

copies of all correspondence and discovery which was going on in the case. It put him in position to discuss the merits of the case with Attorney Bayer on various occasions and solicit a release for his clients from Mrs. Breinig in exchange for money. He accepted service of interrogatories, answers to interrogatories, petitions and court orders. By his own admission, he deliberately concealed the fact that his clients were not properly served until after the statute of limitations had run.

From the totality of Clever's participation in this case, we conclude that he was, sub rosa, defending this case on the merits just as he had successfully done in the *Bauer* and *Haydt* cases. Clever acted and talked like a defense counsel, gleaned valuable information from other defense lawyers because they believed he was defending the case and engaged in settlement discussions with counsel. He was an integral player in this case on the merits.

Chiapetta and BAI argue that Clever's conduct did not rise to a defense on the merits in such a manner as to "evidence[s] an intent to forgo objection to the defective service" citing *Cathcart v. Keene Industrial Insulation,* 324 Pa. Super. 123, 135, 471 A.2d 493, 499 (1984). There the Superior Court held that defense counsel's participation in court conferences and drafting and filing of answers to interrogatories did not constitute a waiver of personal service. *Cathcart* is factually and conceptually distinguishable from the instant case. Defense counsel's participation in that case was in connection with the defense of numerous other asbestos cases. Counsel's activities in the case were ordered by the court and were specifically conditioned by both court and all defense counsel on the caveat that lack

of service was not waived by appearing at the conferences in cases where service over defendants had not been effected.

Finally, we point out that the defendants did not file their preliminary objections until more than three years after the complaint with a notice to plead had been received by Chiapetta. Because preliminary objections are responsive pleadings, they must be filed within 20 days of the preceding pleading, or the objection is deemed to be waived. Pa.R.C.P. 1026, 1032; see also, *Hohlstein v. Hohlstein, supra,* at 352, 296 A.2d at 886. Although late pleadings are often allowed in the interest of justice [*Fisher v. Hill,* 368 Pa. 53, 81 A.2d 860 (1951)], defendant has offered no just reason to excuse its three years of inaction during which plaintiff and the other defendant was led to believe that Chiapetta was contesting on the merits. Under these facts, Chiapetta has waived any right to object to the defective service of the complaint. *O'Barto v. Glossers Stores Inc., supra* at 205, 324 A.2d at 476.

We hold therefore that Clever's conduct constituted a waiver of personal service and Chiapetta and BAI are subject to the jurisdiction of this court. To rule otherwise would, in effect, grant a judicial imprimatur to defense stealth tactics which we find both unacceptable in legal practice and unworthy of a member of the bar.

We believe that when a lawyer receives and thereby accepts service of legal documents from another lawyer in a lawsuit, he is duty bound by his oath to the court and the bar to disclose his interest and role, whether official or unofficial, in the case. At the very least,

the attorney should return the documents to the sending lawyer with a message to send no more.

The day of "snap" judgments and ambush motions for dismissal of cases due to technical defects in pleading is now over. The notion that a lawyer must protect a client by any means has also long passed. A lawyer has a higher duty to the court and to the interests of justice than to his or her client. That duty requires the utmost candor, honesty and trust in dealing with opposing counsel and the court.

For the foregoing reasons, we enter the following:

### ORDER

And now October 5, 1995, it is hereby ordered and decreed that the preliminary objections of defendants Frank Chiapetta and Blasting Analysis International are hereby denied and dismissed. Said defendants shall file responsive pleadings within 20 days after receipt of this order.